1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

8
9

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>        v.<br><br>DOXO, INC., a corporation,<br><br>STEVE SHIVERS, individually and as an officer of DOXO, INC., and<br><br>ROGER PARKS, individually and as an officer of DOXO, INC.,<br><br>    Defendants. | **Case No. _____**<br><br>**COMPLAINT FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF** |

10
11
12
13
14
15
16
17
18
19

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint

20 alleges:

21        1.        The FTC brings this action for Defendants' violations of Section 5(a) of the FTC

22 Act, 15 U.S.C. § 45(a), Section 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C.

23 § 6821, and the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403.  For

24 these violations, Plaintiff seeks relief, including a permanent injunction, monetary relief, and

25 other relief, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57b.

26

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

1

1

## SUMMARY OF THE CASE

2          2.      Doxo is a third-party bill payment platform that advertises that consumers can

3   "pay any bill"—for example, car loans, utilities, and medical bills—using its purportedly vast

4   payment "network" of billers.  Unbeknownst to most consumers, however, Doxo has no

5   relationship with the overwhelming majority of billers in its supposed "network."

6          3.      Using "dark patterns"—design tricks that manipulate consumers into taking

7   unwanted actions—Doxo dupes consumers into using its service by disguising itself as their

8   billers' official payment channel.  Doxo places ads to intercept consumers attempting to reach

9   their billers directly and styles the headlines of ads and other weblinks—often featuring only the

10  biller's name, not Doxo's—so that they appear to be the biller's own page.  Consumers who

11  click on Doxo's ads and proceed to payment encounter words and images, including the biller's

12  name, contact information, and sometimes even its logo, that reinforce the misimpression that

13  they have reached their biller's official payment site.  At the very last stage of the payment

14  process, Doxo adds junk fees to consumers' bills that in the bulk of cases they could avoid if

15  they paid their biller directly.

16         4.      Doxo's deception has caused consumers to pay millions of dollars in junk fees—

17  and much harm besides.  Consumers have spent hours trying to track down payments made to

18  Doxo, have missed tax, child support, and utility payments, have had medical and other bills sent

19  to collection, and have had their gas, water, and electricity cut off, all because Doxo falsely

20  represented that their payments were made "directly" to their billers.

21         5.      Doxo has also harmed consumers by enrolling them in a paid subscription, again

22  deploying an array of dark patterns.  Until earlier this year—after receiving a copy of the FTC's

23  draft Complaint—if consumers simply clicked on a "User Terms of Service" hyperlink on the

24  payment page, Doxo without warning checked a box that automatically enrolled them in a paid

25  subscription.  And even now, Doxo shrouds from consumers critical terms of the subscription.

26  Doxo charges recurring fees for the subscription, while also continuing to charge many

COMPLAINT
Case No. __:____-cv-_____

subscribers junk fees—a fact Doxo never discloses.  Doxo has known for years that it is systematically charging consumers for unwanted subscriptions but has refused to reform the enrollment process to preserve subscription revenue.

6.     Doxo has persisted in the above conduct even after tens of thousands of consumers have complained to Doxo that they were misled, after hundreds of billers have warned their customers about Doxo's deceptive conduct, and after Defendants Steven Shivers and Roger Parks, two of Doxo's co-founders, have been repeatedly alerted by multiple sources that the company is deceiving consumers.  As one search engine employee noted, "they know *exactly* what they are doing" (emphasis in original).

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

8.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

9.     The FTC is an independent agency of the United States Government created by the FTC Act.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces Section 521 of the GLB Act, 15 U.S.C. § 6821, which prohibits any person from obtaining, or attempting to obtain, customer information of a financial institution relating to another person, by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution.  The FTC also enforces ROSCA, 15 U.S.C. §§ 8401–05, which, *inter alia*, prohibits the sale of goods or services on the Internet through negative option marketing without meeting certain requirements to protect consumers.  A negative option is an offer in which the seller treats a consumer's silence—their failure to reject an offer or cancel an agreement—as consent to be charged for goods or services, and a paid subscription is an

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

3

1    example of such a negative option.

2                                    **DEFENDANTS**

3         10.    Defendant Doxo, Inc. is a Washington corporation with its principal place of

4    business at 101 Stewart Street, Suite 800, Seattle, WA 89101.  Doxo transacts business in this

5    District and throughout the United States.  At all times relevant to this Complaint, acting alone or

6    in concert with others, Doxo has advertised, marketed, distributed, or sold bill payment services

7    to consumers throughout the United States.

8         11.    Defendant Steve Shivers is the Chief Executive Officer and co-founder of Doxo.

9    At all times relevant to this Complaint, acting alone or in concert with others, he has formulated,

10   directed, controlled, had the authority to control, or participated in the acts and practices of

11   Doxo, including the acts and practices described in this Complaint.  Shivers resides in this

12   District and, in connection with the matters alleged herein, transacts or has transacted business in

13   this District and throughout the United States.

14        12.    Defendant Roger Parks is the Vice President, Business Development and co-

15   founder of Doxo.  At all times relevant to this Complaint, acting alone or in concert with others,

16   he has formulated, directed, controlled, had the authority to control, or participated in the acts

17   and practices of Doxo, including the acts and practices described in this Complaint.  Parks

18   resides in this District and, in connection with the matters alleged herein, transacts or has

19   transacted business in this District and throughout the United States.

20                                   **COMMERCE**

21        13.    At all times relevant to this Complaint, Defendants have maintained a substantial

22   course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

23   15 U.S.C. § 44.

24                        **DEFENDANTS' BUSINESS ACTIVITIES**

25        14.    Doxo operates a bill payment platform for consumers to pay their bills through its

26   app or website.  The majority of Doxo's customers land on Doxo's website after searching online

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

4

1  for ways to pay their biller.

2  **Doxo's Misrepresentations That It Is an Official Payment Channel and That Consumers**

3  **Would Pay the Amount on Their Bill**

4       15.    Consumers looking to pay a bill online often try to reach the biller's payment site

5  using a search engine.  To find the biller's site, the consumer might enter into a search engine the

6  biller's name and some variant of "bill pay" or "pay online."  A customer seeking to pay a bill

7  from the medical testing company Labcorp, for example, might search for "Labcorp payment

8  online bill pay."  After entering the search terms, the consumer sees the following:



18       16.    At the top of the search results, the consumer sees a link whose headline mentions

19  the name of the intended biller.  In the above example, the headline reads:  "Labcorp │ Make

20  Your Payment Online."

21       17.    After clicking the top link, the consumer is directed to a landing page.

22  Sometimes, the biller's logo appears on the web page.  Other times, the biller's name appears as

23  the largest text on screen, in black against a white background:

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

5

18.     The biller's name and address also appear on the landing page.

19.     The landing page instructs the consumer to "Pay your LabCorp bill with doxo." The website also informs the consumer that he or she will "[n]ever miss a due date," will have "[r]eal-time tracking" of payments, and can "[p]ay thousands of billers directly from [a] phone."

20.     The consumer enters an "Amount" to pay and then presses "Pay Bill" to proceed to the next step of the payment process.  If the consumer does not enter an amount, the consumer is prompted to "Enter Your Payment Amount" in a box titled "Amount to Pay."  The consumer is then asked to enter a name and email address, account number, and zip code.  After submitting this information, the consumer sees a loading screen that says:  "Please wait while we validate your bill details."

21.     On the next screen, the consumer is asked to enter a password to create a login. After selecting a password, the consumer is asked to select a payment method (credit card, debit card, or bank account) and is then prompted to enter payment information.

22.     On the final screen, immediately before the payment is processed, the consumer sees in large green text the total amount of the charge.  In much smaller, faint gray text, the page shows a "Delivery Fee."  A representative screenshot appears below.

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

6

23.     After the consumer clicks "Send Payment," he or she is immediately charged.

**Doxo Is Not an Official Payment Site and Adds Junk Fees to Consumers' Bills**

24.     Unbeknownst to many consumers navigating the above process, they have just been charged by a company that, in the vast majority cases, has no relationship with their biller and is not an official payment channel.  Less than 2% of the billers in Doxo's purported payment "network" have authorized Doxo to receive payments on their behalf.

25.     As shown above, Doxo places its ads so that they will be seen by consumers searching for their billers, styles its ads and weblink headlines so that they appear as the billers' official payment sites, and arranges the subsequent payment flow to reinforce the misimpression.

26.     In many cases, and for thousands of billers, Doxo's payment links appear at or near the top of consumers' bill pay searches only because Doxo spends millions in advertising to place them there.  For example, Doxo has paid to place its ads in response to consumers who

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

7

search on more than two dozen Labcorp-related words or phrases, including "labcorp," "labcorp billing," "labcorp pay bill," "labcorp payment," and "labcorp pay my bill."

27.     Often, the ads are placed so that Doxo "intercept[s]," in the words of one consumer, people explicitly attempting to reach their biller's payment website. Doxo has, for instance, placed ads in response to searches for "www lapcorp [sic] billing," "www.labcorp.com," "labcorp.com," "lapcorp [sic] com billing," "www.labcorp.com billing," "lab orp [sic] com billing," "labcorp.com/billing," "labcorp.combilling [sic]," and "www.labcorp.com/billing."

28.     The titles—*i.e.*, the large text that consumers read when deciding whether to click a link—trick consumers into thinking that Doxo's ads and weblinks represent their desired destination. In most cases, the headline, crafted by Doxo, mentions only the name of the biller, not Doxo. A consumer who searches for "www.labcorp.com/billing" for example, often sees as the first result a Doxo ad with the headline, "Labcorp │ Make Your Payment Online."

29.     On the landing page that consumers reach after clicking an ad or other link, Doxo's use of the biller's name (the most conspicuous text on the page), contact information, and sometimes even its logo reinforces the misimpression that Doxo *is* a consumer's biller, or at a minimum, the biller's chosen payment platform.

30.     Doxo's misrepresentation is also bolstered by its many statements during the payment process indicating that it has direct information concerning consumers' bills. For example, as recounted above, Doxo frequently informs consumers that their bill information is "validated" by Doxo, that it offers "[r]eal-time payment tracking" and can apprise customers of due dates, and that payments are made "directly" to their billers. In truth, in the large majority of cases, Doxo cannot "validate[]" consumers' bills or alert them to due dates because it has no information about consumers' bills other than what consumers themselves provide. Doxo cannot "track[]" consumers' most urgent concern—when a biller will actually credit their payments. (As a Doxo internal document states, "We don't know when payments are posted, and we should

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

8

never talk about that.")  And Doxo's payments are the opposite of "direct[]":  in millions of cases, Doxo charges consumers immediately but sends payment to the biller by paper check, delivered only days or weeks later.

31.    As noted above (*see* ¶ 17), Doxo's landing page contains bright colors and bold, large-font text.  The page also contains additional light gray text, the smallest text on the page, under the large green button reading, "PAY BILL."  *See id.*  Additional light gray text—some added after Doxo was notified of the FTC's investigation—appears farther down the page, well below the payment window on a mobile device (where many consumers access Doxo's website).  Because of its size, color, and placement, many consumers do not see either set of text before proceeding with the payment process.

32.    Consumers who navigate directly to Doxo's homepage or download the Doxo app are also deceived into thinking that Doxo is an official payment channel for their billers.  Among other misleading statements, both channels boast about Doxo's biller "network" and ability to track payments, when in truth (as alleged above) Doxo has no relationship with the vast majority of supposed "network" members and no ability to track payments after they are made.

33.    Further, throughout the process, Doxo indicates that consumers are paying the "Amount" on their bill.  In fact, it charges more, in the form of a surprise "delivery fee" mentioned without any explanation (and in light gray text) only at the very last stage of an approximately seven-step process—after consumers have, on separate screens, (1) entered an "Amount" or an "Amount to Pay," (2) entered bill details, (3) had bill details supposedly "validate[d]," (4) created a login, (5) selected a payment method, (6) entered payment information, and (7) proceeded to payment.

34.    By the time the consumer arrives at the payment screen, he or she has navigated through as many as seven different screens in the payment flow, expending substantial time inputting sensitive personal and financial information.  Many bills are for uneven amounts and the fee disclosure on the final screen is not prominent, and many consumers do not realize that

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

9

they are paying an amount that exceeds the amount of their bill.  Of the consumers who notice the inconspicuous, belatedly disclosed fee, many believe they are using an official payment channel, and others wasted time on the payment process.

35.     While Doxo charges fees for all credit and debit card payments (and for many payments via bank account), billers typically do not charge fees for bill payments made to them directly.  Consumers have thus paid millions of dollars in Doxo's "delivery fees" that they would not otherwise have been charged.

36.     As explained below, Doxo has persisted in its misrepresentations despite an outpouring of complaints from consumers, billers, and a search engine.

**<u>Tens of Thousands of Consumers Have Complained</u>**

37.     Doxo's own internal surveys have repeatedly found that significant percentages of consumers who send payments to Doxo are unaware they have a Doxo account or wrongly think that they are required to use Doxo's services.  For example, a 2022 survey found that even among so-called "heavy users"—*i.e.*, consumers who made at least eight payments to Doxo— approximately 30% falsely thought that Doxo was the only way to pay their bills.

38.     Consistent with Doxo's internal surveys, tens of thousands of consumers have contacted Doxo stating that they were deceived by Doxo's payment process, many stating explicitly that they were duped into paying Doxo's delivery fees.

39.     Many consumers report that they were deceived by Doxo into believing they were paying their bills directly to their biller.  For example:

- "I didn't even know that I was actually dealing with a third party bill pay system when the hospital doesn't even charge you to make a payment online";

- "DOXO spoofs [company name] pretending to be that water utility . . . . The[] way they position themselves makes it seem like it is the only way to pay your bill";

- "I was completely unaware I was using Doxo. They sleazily set it up some way, I dont know how, so you think you are paying directly";

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

10

- "this service is a scam! When you try to pay a toll for EZ pass this site links you to them instead of actual EZ pass and you dont know it.  This just happened to me. I didnt realize that it wasnt the actual Ezpass payment site.  They charged me a fee of $4 to pay my $3.10 toll";

- "Thought I was paying directly to m[y] lender.  Turns out they are just a third party who forwards my payment.  How do I know?  My payment ended up being late since doxo sent it in 2 weeks later";

- "I am furious right now. I used Bing to look up paying my Labcorp bill online.  Somehow an ad popped up before the Labcorp site.  This site also used the Labcorp Logo on their site.  I didn't realize until it was too late that I paid this site instead of Labcorp.  They also charge a ridiculous fee";

- "So thinking I was paying this company but you're a third party, you electronically deduct the money instantly out of my bank account.  Only to find out that you send the paper check to the person[,] that makes no sense."

40.    Other consumers have reported that they were tricked into thinking that Doxo was their billers' chosen payment platform:

- "I was on my [water company's] site to pay my bill and then this company pops up.  So I thought that was how I had to do it because I paid my bill online before and its free.  So I thought something had changed and this is what they're using now and . . . I felt it was false . . . advertising or something because it made it seem like that was . . . how I had to pay";

- "They misrepresented themselves as if they were associated with my physical therapy provider online bill payment.  I though[t] I was paying my medical bill thru Doxo.com only to learn they are not affiliated with my provider at all.  They tricked me into thinking they were an official payment site by displaying my physical therapy provider name, phone number, address information and website";

- "I made one payment because I thought that's how I needed to pay my utility bill.  And I have discovered that I don't need to use you guys";

- "Doxo is a middle man collection company that is not required.  It was not at all needed for a doctor's payment but it [led] me to believe that it was required, as was the $3.99 charge to utilize it."

41.    Many consumers have also complained about Doxo "suddenly" adding fees (as one consumer complained) at the end of the payment process.  Consumers have complained, for example, that they realized there was a fee only after they "set it up and put all [their] credit card

COMPLAINT
Case No. __:___-cv-_____

info in"; that "Doxo did not provide a true total of processing fees . . . until [they] submitted payment"; that they "did not know until it was too late that there was a sizable service charge"; that "after you put in all your info they hit you with a . . . fee"; and that there were "massive" fees that they were not "told about up front."  As one consumer stated:  "After they make you sign up, create password, go through security protocols and right before clicking PAY NOW . . . BAM !!! . . . only then they let you know that there's an extra charge."

42.     As noted above, Doxo's misrepresentations have tricked consumers into paying millions of dollars in unnecessary add-on fees.  But consumers' complaints made directly to Doxo reveal that in some cases, consumers suffer additional harms.  Many consumers discover that Doxo is not an official payment channel only when their payment never arrives at their biller.  Consumers have spent hours trying to track down payments, often calling Doxo in great distress, concerned that they have been the victim of a scam.  They have received warning letters from bill collectors for medical bills they already paid.  They have been charged late fees and fines.  They have worried their license would be suspended due to non-payment of tolls, and that they would be penalized for non-payment of income or property taxes.  They have missed child support payments.  They have had their water, gas, internet, and electricity turned off and their car insurance lapse.  And they have double paid their bills (once to Doxo, once to the biller) to avoid service cutoffs—all for payments that Doxo promised them would be made "directly" to their billers.

43.     Defendants Shivers and Parks have received direct notice of consumer complaints.  Parks has personally responded to consumers who reported they were misled by Doxo, and Shivers was directly informed that consumers frequently raised similar complaints.  In April 2020, for example, Shivers told a subordinate that he wanted to use a chatbot to "deflect[]" consumers from speaking to a live customer support agent.  In response, the subordinate informed Shivers that many consumers were contacting Doxo because of "confusion with us being the biller," "late fees," and "utilities getting turned off."

COMPLAINT
Case No. __:___-cv-_____

44.     In July 2020, Parks responded to an inquiry from a state attorney general's office regarding Doxo's advertising and billing practices.  Parks acknowledged under oath that Doxo received complaints from consumers regarding "the relationship between Doxo and a [biller]."

45.     In February 2021, Parks was informed via email that a credit card company had terminated Doxo's access to its network based in part on consumer complaints that Doxo had "intercept[ed] payments online to upcharge the [c]ustomers."  Parks negotiated directly with the credit card company to regain access to the network without any changes to Doxo's ads or payment flows.

46.     In March 2021, Shivers responded to an investigation into Doxo by a second attorney general's office.  Shivers's responses, under oath, stated that the company had received 58 complaints from state agencies regarding its practices.

47.     In March 2022, a North Carolina local news station reported that consumers, misled by the "wording on [Doxo's] website," paid Doxo instead of their intended biller, a state toll authority.  A toll authority spokesperson stated that consumers had been charged $100,000 in late fees due to Doxo's delayed payments.  Instead of proposing any changes to Doxo's practices, Parks responded to the report by accusing the toll authority spokesman of defamation in an email later forwarded to Shivers.

### Hundreds of Billers Have Complained About Doxo's Practices

48.     Many billers have complained directly to Doxo that its practices were deceiving consumers.  Billers often demand that Doxo cease using the biller's name and logo, cease collecting payments purportedly on the biller's behalf, or otherwise remove the deceptive elements of Doxo's website and payment process.

49.     For example, in April 2020, a nationwide network of urgent care centers wrote to Parks stating that Doxo's ads and website were giving customers "false assurance that somehow Doxo is affiliated with or sponsored by" the company.  The company demanded removal from Doxo's directory and the deletion of the company's information from Doxo's website.  Doxo

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

13

refused.

50.     Doxo universally rejects similar requests.  As one Doxo employee stated, "we hear complaints from [billers] fairly often on the support side and it doesn't change anything, we don't remove them/stop using their name."  Both Shivers and Parks acknowledged this policy in their sworn responses to state attorney general inquiries.  *See supra* ¶¶ 44, 46.  As Parks stated, "Doxo does not consider requests from [b]illers to be removed from the directory."

51.     To protect consumers from Doxo's deception, hundreds of billers have taken their complaints public, posting statements on their websites that Doxo, as one entity stated, "misleads members into thinking they are part of us."  These statements have come from, among other entities, hospitals, physicians, utility companies, insurers, and divisions of state and local governments.

52.     Many of these public statements explicitly note that Doxo's website is deceptively designed to appear like the billers' authorized payment site:

- "Doxo has created a page with our logo and name that looks very official, but it is not" (water company);

- "It may appear that Doxo.com is affiliated with [local hospital]. IT IS NOT";

- "We have been receiving complaints that [Doxo] has set up online payment pages, claiming to be for [waste management company]";

- "Doxo.com is a 'bill payment' website that looks official but is **NOT AFFILIATED** with us" (water company) (emphasis in original);

- Doxo "linked their site to our website and tried to mimic our website—several errors exist but to the customer unfamiliar with our website, it will look legit" (utility company);

- "Third-party payment companies like doxo.com want you to think they are our partners assisting with your payment processing to us.  Doxo.com and [physicians' group] are NOT partners."

53.     These statements typically note that Doxo charges extra fees that consumers will not incur if they pay their bill directly.

COMPLAINT
Case No. __:___-cv-_____

**Doxo Has Received Additional Warnings That It Is Deceiving Consumers**

54.     As part of a 2021 compliance review, employees of a search engine concluded that Doxo's advertising headlines—for example, "AT&T | Pay Your Bill Online"—"impl[y] a relationship" between Doxo and the biller and suggest that "Bill Pay is a service provided by [the biller]."

55.     One employee remarked that Doxo's ads were "super misleading":  "the copy makes it seem like you are working with a trusted brand that [Doxo] already ha[s] a relationship with vs. a middle man."  Another employee observed that Doxo's ads placed "brand term at the top which makes you think you are on an authorized site."  Summarizing Doxo's conduct, the employee stated, "[t]he thing that kills me is they know *exactly* what they are doing" (emphasis in original).

56.     At the time of its compliance review, the search engine had received complaints from more than 1,500 companies reporting that Doxo was using their trademarks without permission.  A search engine employee noted that the company was "among the highest trademark complaint receivers."

57.     Based on their review, compliance personnel found that Doxo had violated several of the search engine's policies.  Specifically, they concluded that Doxo's ads and URLs were misleading, that Doxo's use of billers' names and logos falsely implied a relationship with the biller, and that Doxo had failed to disclose terms in a clear and conspicuous manner.

58.     Search engine employees shared their findings with, among other Doxo employees, Defendant Parks, who in turn informed Defendant Shivers.

59.     Shivers and Parks were directly involved in discussions regarding what changes to make in response to the search engine's findings, and both discussed proposed changes with search engine employees.  Shivers and Parks proposed that Doxo leave its ads and webpages for each biller unchanged unless the biller complained to the search engine multiple times.  Today, Doxo ads and payment flows are substantially identical to the ones identified as "super

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

15

1  misleading" by the search engine's 2021 review.

2  **Doxo Fails to Disclose Material Terms or Procure Consent for Its Subscription Service**

3  60.    Doxo compounds the harm suffered by many consumers by enrolling them in a

4  subscription without clearly and conspicuously disclosing the fees subscribers will pay and

5  without getting their consent to the fees.  Many consumers are shocked to discover in the months

6  that follow their bill payment that Doxo has charged them for a paid subscription while also

7  charging them additional fees for many types of bill payment.  Many learn of the existence of

8  Doxo only after seeing the company's unexpected recurring charges on a bank or credit card

9  statement.

10  61.    Unbeknownst to many consumers, Doxo enrolled them in a subscription that

11  comes with recurring charges even though they took no affirmative steps to enroll.  At the very

12  end of the bill payment process, a clickbox appears:



24  62.    The box is unchecked.  But until February 2024 (well after receiving notice of the

25  FTC's investigation, and after receiving the FTC's draft Complaint), if consumers clicked on the

26  "User Terms of Service" hyperlink in the fine print, Doxo *automatically* clicked the box—

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

16

without alerting the consumer.  Users who proceeded to payment without noticing that Doxo had clicked the box in the interim were charged for a subscription.

63.     To this day, nearby and prominent text indicates that by creating a "doxoPLUS subscription," consumers can avoid Doxo's so-called "delivery fees" (in the image above, "**Save $3.50**") (emphasis in original).  In fact, Doxo charges recurring fees for the subscription while also often charging subscribers delivery fees—a fact Doxo never discloses.

64.     Doxo formerly mentioned the cost of the subscription in larger, bolded text next to the clickbox but in or around March 2020, altered the page to make the cost less noticeable.  Many consumers do not see the moved, shrunken, and unbolded text given its size and placement in the middle of other small-print text.

65.     Doxo does not mention anywhere during the enrollment process that it charges many doxoPLUS subscribers delivery fees.  The small text below the clickbox promises that "doxoPLUS subscribers pay all their bills without payment delivery fees," but in truth Doxo charges payment fees to doxoPLUS subscribers—the same fees it charges to non-subscribers—for all credit card and many debit card payments.

66.     Doxo executives and Board members are aware that the company's doxoPLUS enrollment flow causes widespread customer confusion and results in many unwanted doxoPLUS subscriptions.  In a 2019 presentation attended by Shivers and Parks, for example, Doxo executives informed the Board that a "large number of users who enter doxoPLUS as part of the pay flow[] are . . . confused about the value proposition."  The presentation also noted that there would be "much less risk of confusion or accidental subscriptions" if Doxo presented doxoPLUS as a standalone offer and not part of the bill payment flow.

67.     Tens of thousands of consumers have complained directly to Doxo that they never signed up for a paid subscription and did not authorize any recurring charges.  Among thousands of similar sentiments, consumers have expressed to Doxo that "I didn't sign up for this," "I wasn't trying to set up anything monthly," "I'm seeing charges that I didn't authorize," "I do not

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

17

wish to use a service I didn't sign up for," "I didn't sign up for that," "I don't know what [this charge] is for," and "I didn't expect that money to be coming out."

68.     In April 2020, Shivers and Parks were informed that 65% of doxoPLUS subscribers who cancelled either did not know they had a subscription or (wrongly) thought a subscription was required to use Doxo.  At a subsequent Board meeting, attended by Shivers and Parks, Doxo set a "long-term goal to eliminate users enrolling in doxoPLUS if [they] don't understand the offer."  In the "near term," though, the company opted to keep the enrollment flow as-is to preserve doxoPLUS subscription rates.

69.     In a 2022 internal survey, Doxo found that approximately 40% of consumers charged for a doxoPLUS subscription were not aware that they had a doxoPLUS account.  And many other consumers, regardless of whether they knew they had a doxoPLUS account, were unaware that the account came with recurring and bill payment fees.  The results of the survey were highlighted at a Board meeting at which both Shivers and Parks presented.

70.     Doxo has developed a standard customer service response to consumers who ask why they are being charged for an unwanted paid subscription.  Representatives tell consumers not that they affirmatively enrolled in doxoPLUS, but that a doxoPLUS account was "created" when they "chose[] the free delivery option" for their bill.

71.     In an effort to prevent consumers from cancelling a service they never signed up for, representatives tell consumers that paying for a doxoPLUS subscription can, for example, "help [them] save a lot of money on delivery fees" and "eliminate delivery fees"—even though Doxo also charges many doxoPLUS subscribers delivery fees.

72.     Despite knowing for years that many consumers are charged for unwanted paid subscriptions, Doxo refuses to change its doxoPLUS enrollment process.  Instead, Doxo's primary response has been to enlist the services of a third party to fight chargebacks from consumers who have disputed Doxo's unauthorized doxoPLUS subscription fees.

73.     Based on the facts and violations of law alleged in this Complaint, the FTC has

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

18

reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

## VIOLATIONS OF THE FTC ACT

74.      Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

75.      Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I

### *Deceptive Representation That Doxo Is an Official Payment Channel*

76.      In numerous instances in connection with the advertising, marketing, promotion, or provision of bill payment services, Defendants have represented directly or indirectly, expressly or by implication, that Doxo is an official payment channel for consumers' billers.

77.      Defendants' representations as described in Paragraph 76 are false or misleading.

78.      Therefore, Defendants' representations as described in Paragraph 76 constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II

### *Deceptive Representation Regarding Payment Amount*

79.      In numerous instances in connection with the advertising, marketing, promotion, or provision of bill payment services, Defendants have represented directly or indirectly, expressly or by implication, that consumers will pay the amount on their bill.

80.      Defendants' representations as described in Paragraph 79 are false or misleading.

81.      Therefore, Defendants' representations as described in Paragraph 79 constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE GLB ACT

82.      Section 521 of the GLB Act, 15 U.S.C. § 6821, became effective on November 12, 1999. Section 521(a)(2) of the GLB Act, 15 U.S.C. § 6821(a), prohibits any person from

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

19

"obtain[ing] or attempt[ing] to obtain . . . customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution."

83.     The GLB Act defines "customer" to mean "with respect to a financial institution, any person (or authorized representative of a person) to whom the financial institution provides a product or service, including that of acting as a fiduciary." 15 U.S.C. § 6827(1). The GLB Act defines "customer information of a financial institution" as "any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer." 15 U.S.C. § 6827(2). The GLB Act defines "financial institution" to include "any institution engaged in the business of providing financial services to customers who maintain a credit, deposit, trust, or other financial account or relationship with the institution." 15 U.S.C. § 6827(4)(A).

84.     Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), empowers the FTC to enforce Section 521 of the GLB Act "in the same manner and with the same power and authority as the [FTC] has under the Fair Debt Collection Practices Act ["FDCPA"] . . . to enforce compliance with such Act." Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), a violation of the FDCPA is deemed an unfair or deceptive act or practice in violation of the FTC Act. Section 814(a) of the FDCPA further provides that all of the functions and powers of the FTC under the FTC Act are available to the FTC to enforce compliance by any person with the FDCPA, including the power to enforce provisions of the FDCPA in the same manner as if the violation had been a violation of an FTC trade regulation rule.

### Count III

### *Use of False Statements to Obtain Customer Financial Information*

85.     In numerous instances in connection with the advertising, marketing, offering, or provision of bill payment services, Defendants have made false, fictitious, or fraudulent statements or representations to customers of financial institutions to obtain or attempt to obtain

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

20

customer information of a financial institution from those customers, such as bank account numbers, routing numbers, credit card numbers, and debit card numbers, including by representing, directly or indirectly, expressly or by implication, that (i) Defendant is an official payment channel for consumers' billers and (ii) consumers will pay the amount on their bill.

86.     Therefore, Defendants' acts and practices set forth in Paragraph 85 violate Section 521 of the GLB Act, 15 U.S.C. § 6821, and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT**

87.     The Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405, became effective on December 29, 2010.  Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce.  To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business."  Section 2 of ROSCA, 15 U.S.C. § 8401.

88.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(w), unless the seller, *inter alia*, clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information and obtains the consumer's express informed consent before making the charge.  15 U.S.C. § 8403.

89.     The TSR defines a negative option feature as a provision in an offer or agreement to sell or provide any goods or services "under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  16 C.F.R. § 310.2(w).

90.     Pursuant to Section 5 of ROSCA, 15 U.S.C. § 8404(a), and Section 18(d)(3) of the FTC Act, 15 U.S.C. ¶ 57a(d)(3), a violation of ROSCA constitutes an unfair or deceptive act

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

21

or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count IV

### *Failure to Provide Required Disclosures*

91.   In numerous instances, in connection with charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as described in Paragraphs 14 to 72 above, Defendants have failed to clearly and conspicuously disclose before obtaining consumers' billing information all material terms of the transaction, including subscription and bill payment fees.

92.   Therefore, Defendants' acts or practices as described in Paragraph 91 violate Section 4 of ROSCA, 15 U.S.C. § 8403 and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count V

### *Failure to Obtain Express Informed Consent Before Charges*

93.   In numerous instances, in connection with charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as described in Paragraphs 14 to 72 above, Defendants have failed to obtain a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction.

94.   Therefore, Defendants' acts or practices as described in Paragraph 93 violate Section 4 of ROSCA, 15 U.S.C. § 8403, and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

95.   Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the GLB Act, and ROSCA.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## PRAYER FOR RELIEF

Wherefore, the FTC requests that the Court:

A.      Enter a permanent injunction to prevent future violations of the FTC Act, the GLB Act, and ROSCA;

B.      Award monetary and other relief within the Court's power to grant; and

C.      Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,

Dated: April 25, 2024

By: /s/ James Doty
JAMES DOTY (NY #4552550)

By: /s/ Edward Smith
EDWARD SMITH (DC #1725265)

Federal Trade Commission
600 Pennsylvania Ave. NW
Mail Stop CC-10232
Washington, DC 20580

202-326-2628; jdoty@ftc.gov (Doty)
202-615-1331; esmith2@ftc.gov (Smith)
Fax: 202-326-3768

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

COMPLAINT
Case No. __:___-cv-_____

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2628

23