The Honorable Jamal N. Whitehead

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

FEDERAL TRADE COMMISSION,

        Plaintiff,

        v.

DOXO, INC, a corporation; STEVE SHIVERS, individually and as an officer of DOXO, INC.; and ROGER PARKS, individually and as an officer of DOXO, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:24-cv-00569-JNW

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

**NOTED FOR CONSIDERATION: July 22, 2024**

**ORAL ARGUMENT REQUESTED**

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................ 1

Argument .................................................................................................................... 3

I.    The FTC's Requests For Injunctive Relief Are Moot. ................................... 3

    A.    Background ............................................................................................ 4

    B.    The FTC Act Claims Are Moot. ........................................................... 8

    C.    Count V Is Moot. .................................................................................. 9

II.    The Complaint Fails To State Actionable Claims. ....................................... 10

    A.    The FTC Act Claims Fail. .................................................................. 10

        1.    No Reasonable Consumer Could Be Deceived. .............................. 13

        2.    The Complaint Fails To Allege Any Statement That Consumers Pay Only The Amount Of Their Bill With No Fee. .................. 17

    B.    The GLB Claims Fail. ........................................................................ 18

    C.    The ROSCA Claims Fail. ................................................................... 20

        1.    DoxoPLUS Is Not A Negative Option Feature .............................. 20

        2.    Doxo Clearly And Conspicuously Discloses Fees .......................... 22

III.    The Complaint Fails To State A Claim Against Parks. ................................. 25

Defendants Doxo, Inc. ("Doxo"), Steve Shivers, and Roger Parks hereby move to dismiss the Complaint filed by the Federal Trade Commission, Dkt. 1, under Rules 12(b)(1) and 12(b)(6) on the grounds of mootness and failure to state a claim upon which relief can be granted.

## INTRODUCTION

Doxo is a small, innovative company that is transforming the bill-pay industry, increasing competition, and helping consumers. It offers consumers a one-stop portal to conveniently pay bills, as well as a host of related services. Doxo created a first-of-its-kind business that helps consumers organize and pay bills in one place, using a variety of payment methods, with a convenient and easy-to-use website.

The FTC's Complaint paints a misleading picture of Doxo as a fly-by-night scam that hurts consumers, when in fact it has a substantial and loyal customer following, has a long-standing and successful business that adds value, and is decidedly pro-consumer. The reality is that this case centers on a disagreement about font size and has nothing to do with a scam. The Complaint uses a host of incendiary allegations that fail to stand up to closer scrutiny. Large swaths of the Complaint are irrelevant rhetoric, unrelated to the claims asserted, and rely on incorrect or skewed facts—*e.g.*, screenshots misleadingly cropped to remove language that defeats the claims. The claims fail as a matter of well-settled law.

First, the Complaint alleges that Doxo violated the FTC Act because a reasonable consumer would be deceived into believing that Doxo is an official billing channel for all billers. Judge Jones of this Court recently rejected the same argument and held that no reasonable consumer would believe Doxo is affiliated with all billers. The FTC also alleges that no reasonable consumer would understand Doxo charges a fee for its service. But Doxo expressly and repeatedly states that fees may apply and tells the user exactly what it is charging. Moreover, the FTC Act claims

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

1

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

1    are moot because Doxo already (and voluntarily) addressed the issues by making changes to its

2    website.

3          Second, the Complaint alleges a violation of the Gramm-Leach-Bliley Act ("GLB"), which

4    requires a literally false statement.  There is no such allegation in the Complaint.  Instead, it argues

5    that Doxo's website is deceptive by implication, which is not actionable under the GLB.

6          Third, the Complaint alleges a violation of the Restore Online Shoppers' Confidence Act

7    ("ROSCA"), which prohibits a "negative option" without clearly and conspicuously disclosing

8    material terms before obtaining the consumer's billing information.  But Doxo's subscription

9    service does not use a negative option.  Doxo discloses all terms clearly and conspicuously.

10         Finally, the Complaint should be dismissed against Roger Parks individually.  The FTC

11   does not make the necessary allegations about Mr. Parks' involvement in the conduct at issue to

12   warrant individual liability.

13         The clear-cut failure of the FTC's claims raises the question of why this lawsuit was filed

14   in the first place.  Before filing, Doxo participated in a year-long investigative process through

15   which it provided the FTC with voluminous internal documentation.  Though Doxo did not violate

16   any laws, it agreed to changes in the spirit of being a responsible corporate citizen.  The FTC,

17   however, was uninterested in voluntary compliance.  Tellingly, the FTC has not sought preliminary

18   injunctive relief—for the simple reason that it is accomplishing through press what it cannot

19   through litigation, falsely telling consumers that Doxo is an "impersonator" and a "scam" that they

20   should avoid.[1]   The publicity the FTC aggressively sought from filing this case is causing

21   incalculable harm to Doxo.

22

23

24
_____

[1] *E.g.*, https://consumer.ftc.gov/consumer-alerts/2024/04/pay-your-bills-not-impersonators ("Pay your bills, not impersonators").

The FTC, acting with the authority of the federal government, has the power to destroy a small business merely by making allegations regardless of whether those allegations have any prospect of success at trial. The FTC's claims are moot and lack legal merit, and therefore warrant immediate dismissal. Short of that, Doxo will request an expedited trial at the Court's earliest opportunity to remove this cloud over its business.

## ARGUMENT

## I.   THE FTC'S REQUESTS FOR INJUNCTIVE RELIEF ARE MOOT.

"[A] federal court has no authority to give opinions upon moot questions," *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quotation omitted), because "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case," *Burke v. Barnes*, 479 U.S. 361, 363 (1987). Rule 12(b)(1) is the proper vehicle for challenging mootness, and the Court can rely on facts outside of the pleadings. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can . . . rely on affidavits or any other evidence properly before the court.")

"Even if a court has jurisdiction under Article III to decide a case, prudential concerns may militate against the use of judicial power, *i.e.*, the court should treat the case as moot for prudential reasons." *Wallis v. IndyMac Fed. Bank*, 717 F. Supp. 2d 1195, 1198 (W.D. Wash. 2010). The Court may dismiss a case as prudentially moot if there is no meaningful relief to be granted. *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014). A claim for an injunction against allegedly misleading advertising can be "rendered moot by the defendants' subsequent act of removing the offending material from their websites." *Mut. Pharm. Co. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 944 (C.D. Cal. 2006); *see also Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 524–25 (S.D.N.Y. 2009) (cessation of ads and commitment

1   not to run them during lawsuit "obviate[d] the need for" injunction); *Moroccanoil, Inc. v.*
2   *Dermorganic Lab'ys, Inc.*, 2009 WL 10675634, at *6 (C.D. Cal. Nov. 9, 2009).

3   ### A. Background

4   Doxo is an online bill-pay service. Its website is clear, simple, and intuitive. A description
5   of illustrative customer flows through the website is provided in the Declaration of Steven Shivers
6   (hereinafter, "Decl."), Doxo's CEO, submitted herewith. "Every page of doxo's website, located
7   at doxo.com, prominently features the DOXO word mark, Doxo's logo, and top and bottom
8   banners in the Doxo blue." *CMRE Fin. Servs. Inc. v. Doxo Inc.*, 2022 WL 16701259, at *2 (W.D.
9   Wash. Oct. 7, 2022), *report and recommendation adopted*, 2022 WL 16699090 (W.D. Wash. Nov.
10  3, 2022); *see also* Decl. at ¶ 7.

11   Doxo offers a simple and secure all-in-one bill-pay system through which consumers can
12  pay their bills to more than 115,000 billers across the country. Decl. at ¶ 2; *see also CMRE*, 2022
13  WL 16701259, at *2. This streamlined system allows Doxo's users to organize all their biller
14  accounts, manage all their due dates, and pay all their bills through a single site, with a single login.
15  Decl. at ¶ 2. Further, Doxo does not share customer payment account information with billers,
16  which improves the security of users' information (from hacks and the like). *Id.* at ¶ 3. Since
17  Doxo's inception, over 11 million users, across more than 95% of U.S. ZIP codes, have paid tens
18  of thousands of different billers on Doxo. *Id.* at ¶ 2.

19   If a biller is not in Doxo's directory, any Doxo user can request that a new biller be added.
20  *Id.* at ¶ 8. When added, each biller is validated by Doxo and Doxo's website is updated with a
21  biller profile page for the new biller. *Id.* A biller profile page organizes the relevant phone
22  numbers, emails, addresses, web links, and Doxo statistics for that biller, using a standardized
23  template across all billers in Doxo's directory. *Id.* at ¶ 9. Users can therefore access relevant
24

1 information for all their billers in one format, on a single application, with a uniform payment

2 experience, regardless of the industry or size of each respective biller. *Id.* at ¶ 10.

3 "The Doxo Biller Profile Page includes various items making clear that Doxo is not

4 affiliated with any one biller, for example, by listing other overlapping billers, including a payment

5 location map, and providing average payment amount." *CMRE*, 2022 WL 16701259, at *2. Doxo

6 delivers payments to billers in its network using the same electronic and mailed check delivery

7 processes that bank bill-pay and other independent bill-pay services have for decades. Decl. at ¶

8 12. Some billers agree to contract directly with Doxo, in which case Doxo delivers direct payment

9 to them electronically. *Id.* at ¶ 13. To date, 2,394 billers have joined this network. *Id.* Doxo pays

10 other billers through the Mastercard Remote Payment and Presentment Service ("RPPS"), which

11 billers voluntarily enroll in to receive third-party payments, or via mailed checks. *Id.*

12 Doxo charges for its services, of course. The fee is clearly displayed at the time of

13 checkout. *Id.* at ¶ 14. The fee varies based on the amount of the bill, but a typical transaction fee

14 to deliver a bill payment is $3.99. *Id.* If a user pays with a linked bank account, they can pay any

15 biller in the Doxo directory for free. *Id.* Users who pay with a debit or credit card may be subject

16 to a variable fee, which covers Doxo's fee and the costs of third-party banks and payment

17 processors. *Id.*

18 Doxo also offers a subscription service, doxoPLUS, which provides consumers a number

19 of additional benefits, including $1 million in identity theft protection, credit score monitoring,

20 overdraft fee reimbursement, and late fee reimbursement. *Id.* at ¶ 15. In fact, doxoPLUS is far

21 more affordable than standalone identity theft protection services. *Id.* And for bill payments,

22 doxoPLUS expands free payment methods to include transactions made with standard ACH and

23 most debit cards. *Id.* The vast majority of payments made by doxoPLUS subscribers are free

24

(87% vs. 19% for non-subscribers). *Id.* at ¶ 16. Doxo has over 350,000 doxoPLUS members. *Id.* at ¶ 17. Over 70% of Doxo's transactions come from repeat customers. *Id.* at ¶ 11.

Doxo has been in business for over fifteen years and has over 95 employees. *Id.* at ¶ 4. Doxo was founded on the principle of being pro-consumer. *Id.* at ¶ 5. The bill-payment market, as it existed before Doxo, has been a tedious, high friction, and fragmented experience for customers. *Id.* This unnecessary complexity in managing and staying on top of bills contributes to huge expenses for U.S. households—amounting to over $24 billion in late fees and another $10 billion in overdraft fees every year. *Id.*

Satisfied customers are how Doxo stays in business. *See id.* at ¶¶ 6, 11, 20–23. Far from the FTC's misleading narrative, this is no fly-by-night scam. Simplifying the consumer experience in this way brings cost savings and financial health benefits to consumers and billers alike. *See id.* at ¶ 5. The idea is to make paying bills less time-consuming, more certain, and an easier experience for customers. *See id.* at ¶¶ 2, 5, 10. The simplified user interface and taking the work out of the process are what make Doxo so easy and popular. *See id.* at ¶ 10. Having all bills in one place makes life easier, as does tracking deadlines and payments in one place. *See id.* This is why Doxo consistently receives positive customer feedback. *See id.* at ¶¶ 6, 11, 20–23.

Doxo's business is also pro-competition in a market that desperately needs it. *Id.* at ¶ 18. The two prevalent legacy options for online bill pay are via each biller website, or via bank bill-pay services. *Id.* Both have been around, and largely unchanged, for decades. *Id.* Most (but not all) billers do offer a bill pay service on their own website (typically provided by a biller-selected third party bill-pay company)—these services require users to set up logins separately with each biller, share their sensitive payment account info each time, and, in tens of thousands of cases, also charge fees for payments. *Id.* For example, in the utility category alone, 68% of billers have payment fees. *Id.* Most banks also offer bill-payment services, but these services are in nearly all

6

cases tied to a single checking account.  *Id.*  Most Doxo consumers, however, use multiple payment accounts to cover all their bills, and the majority of payments are with debit or credit cards (over 76% of bill payments on Doxo use debit or credit card).  *Id.*

While Doxo's all-in-one bill-pay service is innovative, the underlying bill payment methods have a long history.  Doxo delivers bill payments the same way bank bill-pay services have for decades.  *Id.*  71% of bills paid through Doxo are delivered electronically—27% directly to billers that contract with Doxo and 44% through Mastercard RPPS.  *Id.* at ¶ 13.  The remaining 29% of payments are sent by paper check because the (generally small) biller is not on any electronic remittance network.  *Id.*

In December 2022, the FTC approached Doxo and issued civil investigative demands with questions about Doxo's business.  *Id.* at ¶ 24.  Doxo worked transparently to provide the FTC with a wealth of information, both publicly available and confidential.  *Id.*  The information included transaction details, customer support tickets and transcripts, internal emails, screenshots, and hundreds of other data items.  *Id.*  In all, Doxo provided over 18,000 files (over 300,000 pages) to the FTC.  *Id.*

Prior to this case being filed, Doxo told the FTC that it was voluntarily addressing the issues it had identified.  *Id.*  at ¶ 26. Doxo did not believe it had violated any laws, but at the same time, its business is built on customer satisfaction, and it believes in open and transparent communications with customers.  *Id.* at ¶ 25.  Doxo also was justifiably concerned with the impact even an unmeritorious FTC complaint would have on its business.  *Id.*  Changes included adding even more disclaimers reinforcing that Doxo is an independent third-party bill payment service, making any fee paid by customers even more prominent, and making even clearer the material terms of Doxo's subscription service.  *Id.*  at ¶ 26.

In addition, the FTC identified a glitch in Doxo's website whereby customers could inadvertently check the opt-in box for a subscription when clicking a link to review the subscription terms of service (the "Glitch").  Specifically, the clickable area to check the opt-in box overlapped with the clickable area to open and review the terms of use.  *Id.*  at ¶ 27.  While the action itself would not automatically enroll the user (a user would still have to click the Send Payment button before enrollment would occur), it could have potentially caused accidental enrollment.  *Id.*

Upon learning of this Glitch, Doxo immediately fixed it, and notified the FTC that it had done so before this case was filed.  *Id.*  at ¶ 28.  It then contacted all 1,529 potentially affected customers—less than 0.55% of total subscribers—and offered them full refunds.  *Id.*

The FTC was not interested in Doxo's changes or voluntary compliance, electing to file this case instead.  As a legal matter, however, the changes Doxo made to its system moot the FTC's injunction claims, whether as a matter of Article III mootness or prudential mootness.

**B.  The FTC Act Claims Are Moot.**

The Complaint alleges violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  Only injunctive relief is available for these FTC Act claims—*i.e.*, monetary relief is not available.  *See AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67 (2021).

The FTC alleges: (1) internet search results for bill payment services and Doxo's website suggest Doxo is the official payment channel for billers; and (2) consumers are confused that they pay a fee for Doxo's service.  There has been no FTC Act violation, as discussed below.  Regardless, before this lawsuit was filed, Doxo addressed the FTC's concerns by adding further clarifications to search ads (to the extent it is permitted to) and to its website.  Decl. at ¶ 26.

Regarding internet search results, neither the format nor the placement of those results is within Doxo's control—they are dictated by the internet search provider (such as Microsoft Bing

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

8

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

or Google). *Id.* ¶ 29.  Those search results indicate whether the result is an ad or an organic search result, as well as the name and URL of the company providing the result.  Doxo added further clarification to the content of its search ads with language specifying that Doxo is an "independent," "third-party," or an "all in one" bill payment service.  Further, to the extent the FTC Act claims are based on what a reasonable consumer would think once they click through to Doxo's website, Doxo addressed these issues through several changes, which are detailed in Mr. Shivers' Declaration.  Decl. at ¶¶ 26–32.  These changes added clarifying language over and above the Doxo website features that led this Court to hold that no reasonable consumer could be deceived into thinking Doxo was the official payment channel for unaffiliated billers.  *CMRE*, 2022 WL 16701259, at *9.  Regarding the claim that a reasonable consumer would not understand that Doxo charges a fee for its service, Doxo made several changes to further enhance its disclosures, though Doxo's website previously plainly and obviously disclosed its fee.  Decl. at ¶¶ 14, 26.

Doxo notified the FTC that it was voluntarily making these changes, permanently.  *Id.* at ¶ 32.  The FTC was uninterested and filed this case nonetheless, with the related press releases.

Accordingly, any claim for injunctive relief is moot because Doxo agreed to make changes eliminating any possible confusion.

## C. Count V Is Moot.

Count V claims a violation of ROSCA for enrolling customers in a subscription service without their express informed consent.  The allegation appears to be based on Paragraphs 61 and 62 of the Complaint.[2]  Count V apparently seeks an injunction prohibiting Doxo from

---

[2] The Complaint is far from clear on this point, incorporating all previous allegations so as to make it impossible to discern the nature of the allegation.  Courts have criticized this "shotgun" approach to pleading. *See, e.g.*, *Barmapov v. Amuial*, 986 F.3d 1321, 1324–26 (11th Cir. 2021).

automatically checking the subscription box when customers click the link to review the subscription terms of use, *i.e.*, the Glitch.  As discussed, Doxo fixed the Glitch and has already offered all potentially impacted customers refunds.  Doxo will not reinstate this unintentional user experience defect in the future. Decl. at ¶ 28. Count V is moot because the conduct ceased and will not resume.  *See Mut. Pharm. Co.*, 459 F. Supp. 2d at 944.  Any consumer harm is therefore remedied.  *See* 15 U.S.C. § 57b(b) (authorizing the Court to "grant such relief as [it] finds necessary to redress injury to consumers . . . resulting from the rule violation").

## II.     THE COMPLAINT FAILS TO STATE ACTIONABLE CLAIMS.

A complaint that fails to state a claim upon which relief can be granted must be dismissed. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1175 (9th Cir. 2021).  A plaintiff must "include enough facts 'to raise a right to relief above a speculative level," and "a formulaic recitation of the elements of a cause of action will not do." *Id.*, at 1176 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, to survive a motion to dismiss, a complaint must contain "well-pleaded facts, not legal conclusions, that plausibly give rise to an entitlement to relief."  *Id*. (cleaned up).

### A.  The FTC Act Claims Fail.

Shorn of rhetoric, Counts I and II boil down to two claims: (1) a reasonable consumer would be deceived into believing that Doxo is an official billing channel for billers; and (2) a reasonable consumer would not understand that Doxo charges a fee for its service.  Compl. at ¶¶ 76–78, 79–81.  Neither claim meets the Rule 12(b)(6) standard.

To prove a violation of Section 5(a) of the FTC Act, the FTC must show that a defendant made a material representation that "is likely to mislead consumers acting reasonably under the circumstances."  *F.T.C. v. Intuit Inc*., 2022 WL 1601403, at *1 (N.D. Cal. Apr. 22, 2022) (citing *F.T.C. v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009)).  The "reasonable consumer standard"

Defendants' Motion to Dismiss
(2:24-cv-00569-JNW)

10

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

requires a complaint to demonstrate "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted). A reasonable consumer, therefore, cannot be "selectively blind" and ignore explicit disclaimers. *Hodges v. King's Hawaiian Bakery W., Inc.*, 2021 WL 5178826, at *7 (N.D. Cal. Nov. 8, 2021). Thus, the FTC must show more than a "mere possibility" that the material representation "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965.

Where, as here, the representation at issue appears on a defendant's website, the presence of explicit statements contrary to the alleged misunderstanding cannot sustain a claim that a reasonable consumer would be misled, and the complaint therefore may be dismissed at the Rule 12(b)(6) stage. *See CMRE*, 2022 WL 16701259, at *9–10 (dismissing Washington Consumer Protection Act ("CPA") claim because no reasonable consumer would confuse Doxo's website for that of unaffiliated entity); *Hodges*, 2021 WL 5178826, at *7 (website that included "explicit statements" that product was made in California did not mislead reasonable consumer into believing product was made in Hawaii).

To make this determination, the Court may consider the entirety of Doxo's website under the incorporation by reference doctrine. The doctrine "is intended to 'prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based.'" *Al-Bustani v. Alger*, 2023 WL 1778814, at *3 (W.D. Wash. Feb. 6, 2023) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). On a motion to dismiss, the Court may consider "evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

11

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

1
2
3
4

(9th Cir. 2010) (cleaned up).  Such evidence is, essentially, "part of the complaint."  *Id.* Accordingly, courts "routinely consider the full page of a website where . . . a portion of the page is quoted or relied on in the complaint."  *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1004 (N.D. Cal. 2021) (cleaned up).[3]

5
6
7
8
9
10
11
12
13

Alternatively, the Court may judicially notice that certain information is contained on Doxo's website, and Doxo requests that the Court do so.  *See, e.g.*, *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); FED. R. EVID. 201(b) (judicial notice appropriate where fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").  This Court previously took judicial notice of Doxo's checkout web pages on a Rule 12 motion disposing of similar allegations because "Doxo need not establish the truth of any content in the consumer checkout webpages, only that the information is there."  *CMRE*, 2022 WL 16701259, at *4–5 (taking "judicial notice of [Doxo's] checkout process webpages for purposes of their existence and content").

14
15
16
17
18
19
20
21

Finally, a complaint based on an alleged violation of Section 5 will not survive a motion to dismiss unless it satisfies the heightened pleading standard of Rule 9(b).  *F.T.C. v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) (dismissing Section 5 claim under Rule 9(b) standard where FTC "fail[ed] to allege the 'who, what, when, where, and how' of the Defendants' course of conduct");  *F.T.C. v. D-Link Sys., Inc.*, 2017 WL 4150873, at *3 (N.D. Cal. Sept. 19, 2017) (dismissing Section 5 claims under Rule 9(b) standard that "lack[ed] enough specificity to give [defendant] fair notice of its allegedly deceptive conduct").  The Complaint here fails to pass muster even without this heightened standard.

22
23
24

---

[3] Printouts of the additional web page screenshots—which were incorporated by reference in the Complaint or should be judicially noticed—are attached as Decl. Exhibits B through G.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### 1.   No Reasonable Consumer Could Be Deceived.

The FTC alleges that a reasonable consumer would be misled into believing they are conducting a transaction with a biller on Doxo's website.  In other words, if the customer is paying a bill for the Acme Company, they would believe they are on the Acme Company's website, or that Doxo is the official bill payment service for the Acme Company.  As a matter of law, a reasonable consumer could not plausibly believe these things.  Doxo's directory page for each biller itself states explicitly, in two locations, that Doxo is not affiliated with the biller.[4]  If a user commences a payment, they again land on a page to enter their account information that provides yet another disclaimer that Doxo is not affiliated with that biller.

This is not the first time this Court has addressed this very issue.  The Court previously held a reasonable consumer could not plausibly believe Doxo is a biller's official payment channel. *CMRE*, 2022 WL 16701259.  In *CMRE*, two debt-collection agencies brought claims including unfair competition under the Lanham Act and violations of the CPA,[5] alleging Doxo falsely represented itself as their affiliate and "misle[d] customers into believing that Plaintiffs endorse[d] or sponsor[ed] Doxo's bill-payment services." *Id.*, at *1.  Judge Jones adopted as an order of the Court the magistrate judge's Report and Recommendation finding, on a 12(c) motion applying the same standard as here, that Doxo's website clearly conveys that Doxo is not an official billing channel: "The Doxo Biller Profile Page includes various items *making clear that Doxo is not affiliated with any one biller*, for example, by listing other overlapping billers, including a payment location map, and providing average payment amount." *CMRE*, 2022 WL 16701259, at *2

---

[4] Doxo has contracts with certain billers to provide official services, but those billers are not at issue here.

[5] The applicable texts of the CPA and the FTC Act are substantively identical. *Compare* RCW 19.86.020 *with* 15 U.S.C. § 45(a)(1).  Like the FTC Act, the CPA requires application of the reasonable consumer standard, and courts applying the CPA often look to decisions applying the FTC Act.  *See Young v. Toyota Motor Sales, U.S.A.*, 9 Wash. App. 2d 26, 33–34 (2019), *aff'd*, 196 Wash. 2d 310 (2020).

(emphasis added).  Doxo's users "encounter additional notices in the payment checkout process *specifically disclaiming* any endorsement, sponsorship, or affiliation by any biller." *Id.*, at *7 (emphasis added).

Indeed, as this Court noted, "[e]very page of Doxo's website, located at doxo.com, prominently features the DOXO word mark, Doxo's logo, and top and bottom banners in the Doxo blue." *Id.*, at *2.  Doxo's "home page includes numerous other indications that Doxo is the source of the website's content, such as use of the terms doxoPLUS, doxoDIRECT, and doxoINSIGHTS, and a copyright and trademark notice ('© 2022 doxo inc., doxo is a registered trademark of doxo inc.')." *Id.*  Thus, the Court held "it is *not plausible that any reasonable consumer accustomed to navigating the internet would be confused*." *Id.*, at *9 (emphasis added).  And, accordingly, the Court held that the plaintiffs failed to state a claim.

The Complaint's allegations here mirror those made by the *CMRE* plaintiffs.  *Compare* Compl. at ¶ 3 (alleging Doxo "disguise[es] itself as [consumers'] billers' official payment channel") *with CMRE*, 2022 WL 16701259, at *1 (plaintiffs alleged Doxo's website "misle[d] customers into believing that Plaintiffs endorse or sponsor Doxo's bill-payment services").  The same reasonable consumer standard applies.  And the same facts show the numerous ways in which Doxo dispels any consumer confusion.

When a consumer sees an ad on a search engine (like Bing or Google), it is clear that it is from Doxo. The image included in the Complaint shows that the search result is labeled as an "Ad;" includes the phrase, "Submit Your [biller] Payment Online *with doxo*;" and includes a link showing *Doxo's* website, "https://www.*doxo.com*/pay/labcorp." Compl. at ¶ 15 (emphasis added). Clicking on the link directs the consumer to what is plainly Doxo's landing page, as this Court previously held.  *Id.* at ¶ 17.  Though the Complaint includes an image of the landing page, it selectively crops the image to remove multiple disclaimers. *Compare id. with* Decl. Ex. B; *cf. Al-*

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

14

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

*Bustani*, 2023 WL 1778814, at *3 (plaintiffs may not "surviv[e] a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based").  The non-altered image clearly shows that the landing page is part of Doxo's website, not a biller's. *See* Decl. Ex. B. For example, the landing page includes the following statements, all of which are omitted from the Complaint:

- "doxo is *not an affiliate* of [biller]."

- "*No endorsement* has been given nor is implied."

- "doxo is a secure all-in-one service to organize all your provider accounts in a single app, enabling reliable payment to delivery to *thousands of billers*."

- "Logos and other trademarks within this site are the property *of their respective owners*."

*See* Decl. Exs. B, C (emphasis added).  The Complaint also selectively omits additional indicators that clearly communicate the landing page is not the biller's website, such as the following:

- Doxo's logo.

- Links that read, "doxo.com," "About the doxo Network," "doxo for business," and "Preventing fraud with doxo."

- Link to the *biller's* website.

- List of other billers also paid by Doxo users.

- Other categories (*e.g.*, Loans & Credit Cards, Phone, TV, Internet, Insurance, etc.) of billers that can be added.

*See* Decl. Exs. B, C.  Links to the biller's website are particularly pertinent because, as this Court previously determined, they indicate that the biller is separate from Doxo.  *CMRE*, 2022 WL 16701259, at *8.  Further, in many cases, the Frequently Asked Questions on a biller's landing page states "What types of [biller] payments does doxo process?" *See* Decl. Ex. C.

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

15

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

The Complaint also conspicuously omits the page immediately following the landing page in Doxo's checkout process.  *See* Decl. Exs. D, E.  There, Doxo once again explains that it "is a secure all-in-one service . . . enabling reliable payment to delivery to thousands of billers;" that it "is not an affiliate of [biller];" and that "[n]o endorsement has been given nor is implied."  *See* Decl. Exs. D, E.

Even without the omitted information, the selectively cropped images the FTC provided in the Complaint show that the landing page is part of *Doxo'*s website.  For example:



Compl. at ¶ 17 (emphasis added).  A reasonable consumer could not plausibly understand "doxo . . . is not an affiliate of or endorsed by LabCorp" to mean LabCorp endorses Doxo or is affiliated with Doxo, as that interpretation would directly contradict the statement's explicit language.  *See Hodges*, 2021 WL 5178826, at *6 (statement on package showing manufacturer's address in California was "plainly sufficient to tell consumers" product was not manufactured in Hawaii).

Accordingly, Count I fails as a matter of law.

### 2. The Complaint Fails To Allege Any Statement That Consumers Pay Only The Amount Of Their Bill With No Fee.

Count II alleges a consumer would be misled into believing that there is no fee associated with Doxo's service, such that it pays no more than the underlying bill they are paying. Compl. at ¶ 79.

The reasoning of *CRME* applies with equal force here. Doxo's website expressly contradicts the Complaint's allegation, and therefore no reasonable consumer could be misled. As a threshold matter, the Complaint fails to allege any misrepresentation that users will pay only the amount of their bill and no more. Additionally, the landing page from Doxo's checkout process directly contradicts the FTC's allegations because it explicitly states: "Payments are free with a Linked Bank Account. Other payments may have a fee, which will be clearly displayed before checkout." Decl. Exs. B, C. The Complaint's screenshot of Doxo's landing page crops out that explicit statement. Compl. at ¶ 17. And then, Doxo does indeed disclose the amount of the fee (if applicable) prior to checkout completion. *Id.*; Compl. at ¶ 22. The consumer is shown the total charge (which obviously is greater than the amount the user entered if a fee applies), the fee they are paying, and a bright blue button for questions about the fee:



*See* Decl. Ex. D.

Doxo presents this information prior to completion of checkout and prior to finalizing the transaction. *See* Compl. at ¶¶ 22, 33.

Accordingly, Count II fails as a matter of law.

**B.  The GLB Claims Fail.**

The GLB prohibits obtaining certain customer financial information by "making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution."  15 U.S.C. § 6821(a) (titled "Prohibition on obtaining customer information by false pretenses").  This is known as the "pretexting" provision.  Specifically, it prohibits the use of such statements to obtain "customer information of a financial institution," which is defined to mean "any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer."  15 U.S.C. § 6827(2).  Thus, the Complaint must show Doxo made a "false, fictitious, or fraudulent statement or representation."  15 U.S.C. § 6821(a).

The statute on its face requires that Doxo have made a false statement, not merely that consumers may be confused by its advertising or landing pages.  The GLB mirrors 18 U.S.C. § 1001, which prohibits making "any materially false, fictitious, or fraudulent statement or representation."  Courts interpret that phrase to require literally false statements.  *See, e.g.*, *United States v. Mandanici*, 729 F.2d 914, 921 (2d Cir. 1984) ("[A] defendant may not be convicted under § 1001 on the basis of a statement that is, although misleading, literally true . . . ."); *United States v. Castro*, 704 F.3d 125, 139 (3d Cir. 2013) (same); *United States v. Yates*, 16 F.4th 256, 274 (9th Cir. 2021) (relying on § 1001 case law to explain "When a statement is literally true, it is, by definition, not false and cannot be treated as such . . . .").

By contrast, the FTC Act ( Section 5) covers "deceptive" acts and practices, which has been read to cover more than literal falsehoods.  *See, e.g.*, *FTC v. AMG Cap. Mgmt., LLC*, 910 F.3d 417, 424 (9th Cir. 2018) (Section 5 "does not require only technical accuracy"), *rev'd on other grounds*, *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67 (2021); *see also F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006).  Doxo found no cases holding that

the GLB covers merely misleading statements.  All published cases involve literally false statements.  *See, e.g., FTC v. RCG Advances, LLC*, 2023 WL 6281138, at *9–10 (S.D.N.Y. Sept. 27, 2023); *FTC v. Celsius Network Inc.*, 2023 WL 8603064, at *5 (S.D.N.Y. Dec. 12, 2023).

This interpretation is bolstered by the rule of lenity, which requires that any ambiguity be resolved against the FTC. "[T]he rule of lenity applies" to a statute with "both criminal and noncriminal applications" whether the court "encounter[s] its application in a criminal or noncriminal context." *Leocal v. Ashcroft*, 543 U.S. 1, 12 at n.8 (2004).  The GLB is both a criminal and noncriminal statute.  *See* 15 U.S.C. § 6823.  Therefore, to the extent there is any ambiguity about whether the GLB covers misleading—as opposed to literally false—statements, that ambiguity must be resolved against the government.

The GLB pretexting provisions were designed to deal with a practice defined as "'pretexting'—obtaining a consumer's financial information from financial institutions under false pretenses." Second Annual Report To Congress Under Section 526(b) of the Gramm-Leach-Bliley Act, 2002 WL 849740, at *1.  In the first few years of the statute's existence, the FTC enforced it against companies engaged in aggregating and selling consumers' financial information.  *See id.* (describing "Operation Detect Pretext").  The FTC's enforcement of the pretexting provisions lay dormant for years until *AMG Capital Management., LLC v. FTC*, 593 U.S. 67 (2021).  There, the Supreme Court unanimously rejected the FTC's ability to obtain monetary relief for Section 5 violations (through FTC Act section 13(b)).  *Id*. at 78–79.

No longer able to obtain monetary damages after *AMG*, the FTC now seeks to obtain damages through the GLB, taking the view that any violation of the FTC Act that involves payment with banking information necessarily violates the GLB.  No court has so held.  The FTC Act covers a range of conduct that is not actionable under the GLB because the GLB requires a literally false

statement.[6]  This case appears to be the first in which the FTC reads the pretexting provisions as essentially co-extensive with Section 5, covering representations alleged to be deceptive but not false.[7]

Because the Complaint fails to allege any literally false statement actionable under the GLB, Count III fails as a matter of law.

### C.  The ROSCA Claims Fail.

Count IV alleges Doxo's subscription service, doxoPLUS, is a negative option feature that violates ROSCA because the Doxo website does not clearly and conspicuously disclose all material terms of the transaction.  Count V, which alleges that Doxo failed to obtain consumers' express informed consent for doxoPLUS, appears to concern the Glitch.  *See supra* at 7.  Both counts fail as a matter of law.

#### 1.  DoxoPLUS Is Not A Negative Option Feature.

The FTC alleges the doxoPLUS offering violates ROSCA, 15 U.S.C. §§ 8401–8405. Compl. ¶¶ 87–92.  ROSCA's requirements apply only to goods or services sold on the internet "through a negative option feature," *i.e.*, "in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  15 U.S.C. § 8403; 16 C.F.R. § 310.2(w).

The FTC's allegations confirm the sale of doxoPLUS does not meet that definition.  Doxo's checkout page includes an offer to enroll in a "doxoPLUS Subscription."  Compl. ¶ 61.  The offer states that the subscription costs "$5.99 per month (plus tax where applicable)," that the consumer

---

[6] If the Court concludes that Counts I and II fail to state a claim, then a fortiori, Count III, which is subject to a higher standard, also fails.  But the opposite is not true.

[7] In the past, the FTC brought deception claims analogous to those here and brought claims under different GLB provisions, *but not the pretexting provisions. See, e.g., FTC v. LendingClub Corp., d/b/a Lending Club*, 2021 WL 3666189 (N.D. Cal. Apr. 25, 2021).

may "[c]ancel anytime," and that the subscription is subject to the linked "User Terms of Service." *Id.* To accept the offer, the consumer must affirmatively check the box. *Id.*[8]

That process does not involve interpreting "the customer's silence or failure to take an affirmative action" as acceptance of an offer. 16 C.F.R. § 310.2(w). Rather, Doxo offers a long-term contract in which the consumer makes monthly payments in exchange for services until either the consumer or Doxo decides to terminate the deal, and the consumer takes an affirmative action to accept that offer, forming a single contract. The FTC does not allege that the deal changes after some period of time or that Doxo enrolls the consumer in other offers without agreement. That describes a routine subscription, not a negative option feature. The monthly payments are based on the consumer's agreement to the initial offer of a long-term contract paid monthly, with a right to terminate at any time. Rather than interpreting the consumer's silence "as acceptance of [a new] offer" each month—as the "negative option feature" definition would require, 16 C.F.R. § 310.2(w)—the consumer here agrees up front to a subscription, which remains in effect unless cancelled. By the FTC's logic, a landlord and tenant who sign a 12-month lease providing for monthly rent and an option to terminate early are not really signing a single contract but making month-to-month deals based on the tenant's continued failure to exercise the option to terminate. That is not how contracts work. That the contract here lacks a fixed termination date does not mean that every time a payment is due, the parties should be understood to be entering a brand-new contract only until the next payment.

No binding precedent supports the FTC's contrary view. Some cases involved free trials converting to paid subscriptions based on the customer's silence, *see, e.g.*, *FTC v. Triangle Media*

---

[8] Even the Glitch does not constitute a negative option feature. While the Glitch was in effect, the subscription box could be checked by clicking on the terms of service link, but the consumer still had to take the affirmative step of completing the transaction. There was no automatic enrollment.

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

21

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

*Corp.*, 2018 WL 4051701, at *1 (S.D. Cal. Aug. 24, 2018), *aff'd sub nom. FTC v. Hardwire Interactive, Inc.*, 765 F. App'x 184 (9th Cir. 2019), while others involved time-limited subscriptions that automatically renewed unless the customer objected, *see United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1159 (C.D. Cal. 2021). Still others involved consumers who enrolled in recurring shipments for which they never gave permission. *See FTC v. Cardiff*, 2020 WL 6540509 at *8 (C.D. Cal. Oct. 9, 2020) ("Defendants enrolled consumers who ordered the Products into unauthorized autoship programs . . . ."). The common thread in these cases is that the consumer agreed to one thing (or nothing) and was ultimately signed up for something else without taking any further action. *See, e.g.*, *Washington v. Internet Order, LLC*, 2015 WL 918694, at *1, *5 (W.D. Wash. Mar. 2, 2015). By contrast, a consumer who signs up for doxoPLUS gets exactly what she signed up for: a recurring subscription that costs $5.99 per month. Compl. ¶ 61. Defendants have not found any case holding that such an arrangement involves a negative option feature. That is because the definition's plain text does not cover simple subscriptions like doxoPLUS.

### 2. Doxo Clearly And Conspicuously Discloses Fees.

The FTC's ROSCA claims also fail because Doxo clearly and conspicuously discloses all material terms of the subscription, including the doxoPLUS subscription and bill payment fees.

This Court recently addressed ROSCA's "clear and conspicuous" requirement in *FTC v. Amazon.com, Inc.*, 2024 WL 2723812 (W.D. Wash. May 28, 2024). Because the statute does not define "clear and conspicuous," courts look to the interpretation of analogous language in state and federal statutes. *Id.* at *6–7. For example, under the Fair Credit Reporting Act and the Truth in Lending Act, "'[c]lear means reasonably understandable' and '[c]onspicuous means readily noticeable to the consumer.'" *Id.* at *7 (quotation omitted). Under the UCC, "a term is considered conspicuous when it is so written, displayed, or presented that a reasonable person against which

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

22

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

it is to operate ought to have noticed it." *Id.* (quotation omitted).  The FTC acknowledged in *Amazon.com* that the "reasonable consumer standard applies" to ROSCA.  *Id.*  The FTC must show more than "a mere possibility" of misunderstanding "by some few consumers viewing [the webpage] in an unreasonable manner;" it must show "a probability that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner*, 838 F.3d at 965.

Here, the opt-in box clearly states that doxoPLUS is a "Subscription" and costs "$5.99 per month (plus tax where applicable)."  Compl. ¶ 61.  Moreover, the opt-in box states: "By selecting the box above you agree to the User Terms of Service" with "User Terms of Service" being a hyperlink shown using the standard blue font used to denote a hyperlink.  *Id.*  The "Terms of Service" detail the features of the subscription, including the possibility of fees if a consumer uses a credit card.  *See* Decl. Ex. G.  The Terms explain:

> An approved financial instrument must be used in order for the payment transaction fee for the biller payment to be waived. While a subscriber of doxoPLUS, you may make payments using non-approved financial instruments; however, **you will be charged that instrument's transaction fee** which will be calculated and displayed to you at the time of the transaction. . . .

*Id.* (emphasis added).  After a consumer checks the box electing a doxoPLUS subscription (after which the consumer can still change their payment method if desired), they must hit the "Send Payment" button to subscribe.[9]

This goes above and beyond disclosures that the Ninth Circuit has held to satisfy the reasonable consumer standard.  *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir.

---

[9] "Regulated debit card" refers to cards issued by banks with $10 billion or more in assets, which are subject to the 2011 Durbin Amendment capping transaction fees at 0.05% plus 21 cents. *See* 15 U.S.C. § 1693o-2; 12 C.F.R. § 235.  These low transaction fees make it possible for Doxo to offer free payments using regulated debit cards.  Unregulated debit cards, those issued by banks with less than $10 billion in assets, can have much higher transaction fees, making it uneconomical for Doxo to offer free payments using such cards.

2023) (notice that "[b]y continuing past this page and clicking [the button], you agree to our Terms of Use" coupled with a "hyperlink . . . conspicuously distinguished from the surrounding text in bright blue font" satisfied the standard); *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020–21 (9th Cir. 2024) (statement "By tapping 'Play' I agree to the Terms of Service," with the link to the Terms of Service "conspicuously distinguished from the surrounding text," met reasonable consumer standard).

In applying the reasonable consumer test, the context of the transaction matters. *Amazon.com*, 2024 WL 2723812, at *8. There is a difference between "a consumer who 'contemplate[s] some sort of continuing relationship' and one who is 'merely attempting to start a free trial.'" *Id.* (quoting *Oberstein*, 60 F.4th at 512–13). Here, a consumer who signs up for doxoPLUS is one who "contemplates some sort of continuing relationship"—there is no free trial and the consumer must opt-in by checking a box labeled "Subscription" that clearly states a price per month and links to the Terms of Service. Compl. ¶ 61.

The contrast to the Amazon Prime program is instructive. This Court concluded that Amazon's disclosures were not clear and conspicuous where Prime was presented as a supposed "gift" and a free trial, consumers who chose Prime were signed up even if they did not complete their purchase, and consumers had to choose between a bright button offering "FREE Two-Day Delivery" and less conspicuous text reading "No thanks, I do not want fast, FREE delivery." *Amazon.com*, 2024 WL 2723812, at *9–10. Nothing like that is the case here—where a consumer must affirmatively opt in to subscribe to doxoPLUS, is not offered a free trial, is clearly alerted to the fact that they are signing up for a subscription, and a subscriber cannot checkout for a subsequent payment using an instrument not on the approved instrument list without being notified of that fact and prompted to switch to a free payment method. Decl. at ¶ 16. In such payment checkouts, the subscriber can always select the free payment choice. *See* Decl. Ex. F.

Count V alleges "Defendants have failed to obtain a consumer's express informed consent before charging" the consumer.  Compl. ¶ 93.  It is unclear what allegations are supposed to form the basis of this count, since the count incorporates every substantive paragraph of the Complaint.  *See Barmapov v. Amuial*, 986 F.3d 1321, 1324–25 (11th Cir. 2021) ("complaint containing multiple counts where each count adopts the allegations of all preceding counts" was impermissible "shotgun pleading"); *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023) (dismissing complaint under "well-established law in [Ninth] circuit that so-called 'shotgun pleadings' do not satisfy Rule 8's notice requirement").  To the extent this claim is based on Paragraphs 61 and 62, it is moot as described above.  To the extent it is based on the same allegations as Count IV, it fails for the same reasons.  *See Amazon.com*, 2024 WL 2723812, at *11.  To the extent that Count V is based on some other, unstated, basis, it fails to state a claim.

## III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST PARKS.

To prove individual liability under Section 5 of the FTC Act, the FTC must demonstrate the individual "participated directly" in the misrepresentations at issue "or had authority to control them."  *F.T.C. v. Swish Mktg.*, 2010 WL 653486, at *3 (N.D. Cal. Feb. 22, 2010) (dismissing claim for individual liability for failing "to establish a factual nexus between [individual defendant] and the corporate defendant's alleged misrepresentations and omissions").  Even where a complaint sufficiently pleads a Section 5 claim against an entity, "conclusory" or "boilerplate" allegations against an individual are insufficient.  *F.T.C. v. Wellness Support Network, Inc.*, 2011 WL 1303419, at *11 (N.D. Cal. Apr. 4, 2011) (claim for individual liability against officer of entity failed Rule 8); *see also Swish*, 2010 WL 653486, at *5.  The standard for individual liability under ROSCA or the GLB pretexting provisions should be at least as high as under the FTC Act.  *See Amazon.com*, 2024 WL 2723812, at *16–18 (applying FTC case law to ROSCA claims).  This is

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

25

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

different from the normal civil litigation process in that the FTC received substantial discovery in advance of filing this case.

Here, the Complaint alleges neither that Defendant Parks is an officer, chief executive, or director of Doxo, nor that Parks designed Doxo's web page, devised any part of the checkout process or subscription service, or had any authority over parties that did. *See* Compl. ¶¶ 12, 43–45, 66, 68–69. Parks allegedly received notice of consumer complaints, responded to a state inquiry, resolved an inquiry from an ad network partner, and had discussions with a credit card company. *Id*. at ¶¶ 43–45. The Complaint alleges further that Parks attended presentations and board meetings. *Id*. at ¶¶ 66, 68, 69. But the FTC makes *no attempt* to connect these allegations to Doxo's alleged misrepresentations.

By contrast, in *Amazon.com*, the FTC alleged the individual defendants "oversaw the Amazon Prime subscription program, including the sign-up process and the cancellation process" at issue; "[ran] the entire company;" managed and had "responsibility for the Prime subscription program;" and had "authority over the Prime enrollment and cancellation process." *Amazon.com*, 2024 WL 2723812, at *17.

Accordingly, Mr. Parks should be dismissed from this case.

Defendants' Motion to Dismiss
  (2:24-cv-00569-JNW)

26

Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

1    I certify that this memorandum contains 8,365 words, in compliance with the Local Civil

2  Rules.

3    I certify that counsel for Defendants met and conferred with counsel for the FTC to

4  determine whether this motion could be avoided and to afford the FTC an opportunity to amend

5  the Complaint.

6  Dated:  June 24, 2024                    Respectfully submitted,

7                                           */s/ Courtland L. Reichman*

8                                           Roger M. Townsend
                                            BRESKIN JOHNSON & TOWNSEND
9                                           1000 Second Avenue, Suite 3670
                                            Seattle, WA 98104
10                                          Telephone: (206) 652-8660

11                                          Courtland L. Reichman (*admitted pro hac vice*)
                                            REICHMAN JORGENSEN LEHMAN
12                                          & FELDBERG LLP
                                            100 Marine Parkway, Suite 300
13                                          Redwood Shores, CA 94065
                                            Telephone: (650) 623-1401
14

15                                          David A. King, Jr. (*admitted pro hac vice*)
                                            REICHMAN JORGENSEN LEHMAN
16                                          & FELDBERG LLP
                                            1909 K Street, NW, Suite 800
17                                          Washington, DC 20006
                                            Telephone: (202) 894-7310
18

19                                          Ryan J. Sullivan (*admitted pro hac vice*)
                                            REICHMAN JORGENSEN LEHMAN
20                                          & FELDBERG LLP
                                            901 S. Mopac Expressway
21                                          Building 1, Suite 300
                                            Austin, TX 78746
22                                          Telephone: (650) 623-1401

23                                          *Attorneys for Defendants*

24