UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

DOXO, INC., a corporation,

STEVE SHIVERS, individually and as an officer of DOXO, INC., and

ROGER PARKS, individually and as an officer of DOXO, INC.,

    Defendants.

CASE NO. 2:24-cv-00569-JNW

**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER**

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate

in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B.     ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

   4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.** **ESI Discovery Procedures**

   1. <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

   2. <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

    a. Prior to running searches:

     i. The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party shall provide unique hit counts for each search query.

     ii. After disclosure, the parties will engage in a meet and confer process regarding additional terms sought by the non-producing party.

     iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as

a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

      3.      <u>Format.</u>

          a.      ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF.

          b.      Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format with extracted text and metadata.  Unless otherwise agreed to by the parties, for all other files, natives shall be produced upon reasonable request.

          c.      Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

          d.      If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e. Unless otherwise agreed to by the parties, the full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

4. <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process shall be tracked in a duplicate/other custodian field in the database load file.

5. <u>Email Threading.</u> The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies, except if the lesser inclusive copies include unique family members, in which case the lesser inclusive copies and related family members shall also be produced. Upon reasonable request, the producing party will produce a less inclusive copy.

6. <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: DocID; FamilyID; ParentID; File Path; TextPath; Custodian; AllCustodians; Source; Filename; File Size; File Extensions; MD5 Hash; PRODUCTION_VOLUME; HASREDACTIONS; Exception Reason; PRODBEG; PRODEND; PRODBEG_ATTACH; PRODEND_ATTACH; Page Count; From; To; CC; BCC; EmailSubject; Date Sent; Time Sent; Date Received; Time Received; Author; Title; Subject; Date Created; Time Created; Date Modified; Time Modified; Date Printed; Time Printed; document type; storage location if no custodian; and confidentiality status (indicating whether the producing party has designated a

document "confidential"). The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

      7.    <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D.    Preservation of ESI**

      The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

      1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.  The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.  Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a.  Deleted, slack, fragmented, or other data only accessible by forensics.

   b.  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c.  On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d.  Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   e.  Back-up data that are duplicative of data that are more accessible elsewhere.

   f.  Server, system or network logs.

   g.  Data remaining from systems no longer in use that is unintelligible on the systems in use.

   h.  Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.    Privilege**

1.  A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed by the parties or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product

protection). Privilege logs will be produced to all other parties no later than 30 days after delivering a production unless an alternative deadline is agreed to by the parties.

    2.    Parties are not required to include in privilege logs any of the following information: (a) materials generated after the issuance of the Civil Investigative Demand to Doxo; (b) communications or documents sent or received solely between, or work product generated solely by, counsel for Defendants (or persons employed by, and operating at the direction of counsel for, the Defendants); or (c) communications or documents sent or received solely between, or work product generated solely by, counsel for the FTC (or persons employed by, and operating at the direction of counsel for, the FTC). Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

    4.    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    5. The parties plan to stipulate to entry of a non-waiver order under Fed. R. Evid. 502(d).

DATED: August 26, 2024

FEDERAL TRADE COMMISSION
*Attorneys for Plaintiff*

By s/ James Doty
James Doty (NY #4552550)
Edward Smith (DC #1725265)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
202-326-2628; jdoty@ftc.gov (Doty)
202-615-1331; esmith2@ftc.gov (Smith)


By /s/ Roger M. Townsend

Roger M. Townsend
BRESKIN JOHNSON & TOWNSEND

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER     PAGE - 8
(Case No. 2:24-CV-00569-JNW)

1000 Second Avenue, Suite 3670
Seattle, WA 98104
Telephone: (206) 652-8660

Courtland L. Reichman (*admitted pro hac vice*)
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401

David A. King, Jr. (*admitted pro hac vice*)
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310

Ryan J. Sullivan (*admitted pro hac vice*)
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
901 S. Mopac Expressway
Building 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1401

*Attorneys for Defendants*

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

Dated this 4th day of September, 2024.

Jamal N. Whitehead
United States District Judge