UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

DOXO, INC., a corporation; STEVE
SHIVERS, individually and as an
officer of DOXO, INC.; and ROGER
PARKS, individually and as an officer
of DOXO, INC.,

Defendants.

C24-0569 TSZ

ORDER

THIS MATTER comes before the Court on Defendants' Doxo, Inc.'s and Roger

Parks' Motion to Dismiss, docket no. 14. Having reviewed all papers filed in support of,

and in opposition to, the motion, the Court enters the following order.

**<u>Background</u>**

Defendant Doxo, Inc. is a Washington corporation and third-party bill payment

platform that advertises that consumers can "pay any bill"—for example, car loans,

utilities, and medical bills—using its purportedly vast payment "network" of billers.

Compl. at ❡ 10 (docket no. 1). Defendant Steve Shivers is the Chief Executive Officer

and a cofounder of Doxo.  Id. at ⁋ 11.  Defendant Roger Parks is the Vice President of

business development and a cofounder of Doxo.  Id. at ⁋ 12.

The Federal Trade Commission (the "FTC") initiated this lawsuit in April 2024.

See id. at pp. 1, 23.  In its Complaint, the FTC alleged that Defendants made false or

misleading representations that Doxo is an official payment channel for consumers'

billers in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45,

("FTCA") (Count I); Defendants made false or misleading representations that consumers

will pay the amount on their bill in violation of Section 5(a) of the FTCA (Count II);

Defendants used false statements to obtain customer financial information in violation of

Section 521 of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6821, ("GLBA") and such uses

constitute deceptive acts or practices in violation of Section 5(a) of the FTCA (Count III);

Defendants failed to provide required disclosures in violation of Section 4 of the Restore

Online Shoppers' Confidence Act, 15 U.S.C. § 8403, ("ROSCA") and Section 5(a) of the

FTCA (Count IV); and Defendants failed to obtain express informed consent before

charging consumers in violation of Section 4 of ROSCA and Section 5(a) of the FTCA

(Count V).  See id. at ⁋⁋ 76–81, 85–86, 91–94.

**A.**    **Doxo's website and payment process**

Doxo operates an online bill payment platform for consumers to pay their bills

through its application or website.  Compl. at ⁋ 14.  The FTC alleges that the majority of

Doxo's customers arrive at Doxo's website after searching online for ways to pay their

billers.  Id.  Consumers looking to pay a bill online often try to reach the biller's payment

site using a search engine.  Id. at ⁋ 15.  According to the FTC, Doxo places its

advertisements to be seen by consumers searching for their billers, designs its

advertisements and weblink headlines to resemble the billers' own official websites, and

arranges the subsequent payment process to reinforce the misimpression.  Id. at ⁋ 25.

When a consumer enters a biller's name and some variant of "bill pay" or "pay online"

into a search engine, the top result displays a link with a headline that includes the biller's

name, but clicking the link brings consumers to Doxo's website.  See id. at ⁋⁋ 15, 17.  For

example, when searching "Labcorp Payment online bill pay", the headline for the top

result reads "Labcorp | Make Your Payment Online".  Id. at ⁋ 16.

   From June 24, 2021, until at least June 24, 2024, consumers who clicked on

Doxo's search result link were directed to a landing page displaying the biller's logo,

name, address, or a combination thereof.  See id. at ⁋ 17–18; see also Decl. of Steve

Shivers at 9–10 (docket no. 15); Ex. B to Shivers Decl. (docket no. 15-2 at 2).  The

landing page included instructions directing the consumer to "Pay your [biller name] bill

with doxo."  Compl. at ⁋ 19.  The website also contained text informing the customer that

they would "[n]ever miss a due date," will have "[r]eal-time tracking" of payments, and

can "[p]ay thousands of billers directly from [a] phone."  Id.  Consumers were prompted

to enter a payment amount and click "Pay Bill" to proceed to the next step of the payment

process.  Id. at ⁋ 20; see Ex. B to Shivers Decl. (docket no. 15-2 at 2).  If no amount was

entered, a prompt appeared instructing the consumer to "Enter Your Payment Amount" in

a box titled "Amount to Pay."  Id.  As of June 24, 2024, the landing page includes a

notice stating, "Pay for free with Linked Bank Account.  Fees may apply for other

payment methods", along with a link to the biller's website.  Shivers Decl. at 9 (docket

no. 15); Ex. C to Shivers Decl. (docket no. 15-3 at 2).  In relevant part, text further down on the page reads, "Payments are free with a Linked Bank Account.  Other payments may have a fee, which will be clearly displayed before checkout."  Ex. C to Shivers Decl. (docket no. 15-3 at 2).

The consumer is then asked to enter a name, email address, account number, and mailing address.  Compl. at ¶ 20; Ex. C to Shivers Decl. (docket no. 15-5 at 3).  This webpage currently contains the following disclaimer text: "[D]oxo is a secure all-in-one service to organize all provider accounts in a single app, enabling reliable payment delivery to thousands of bills.  doxo is not an affiliate of [biller name].  Logos and other trademarks within this site are the property of their respective owners.  No endorsement has been given nor is implied."  Ex. C to Shivers Decl. (docket no. 15-5 at 3).  After submitting their personal information, the consumer encounters a loading screen that displays the following message: "Please wait while we validate your bill details."  Compl. at ¶ 20.

On the next screen, the consumer is prompted to enter a password to create a login.  Id. at ¶ 21.  This page contains a statement reading, "[b]y clicking 'Create your login', you agree to the User Terms of Service", with a hyperlink to view those terms.  Ex. C to Shivers Decl. (docket no. 15-5 at 4).

The consumer is then asked to select a payment method.  Compl. at ¶ 21.  From October 16, 2023, until at least June 24, 2024, payment options included credit card, debit card, and bank account, after which time the bank account payment method was removed.  See Shivers Decl. at 10–12 (docket no. 15); compare Ex. D to Shivers Decl.

(docket no. 15-4 at 5) <u>with</u> Ex. E to Shivers Decl. (docket no. 15-5 at 5).  At the next step in the process, a consumer enters their payment account and billing address information.  Ex. D to Shivers Decl. (docket no. 15-4 at 6).  At the bottom of the screen, smaller, light gray text stated that "[b]y clicking 'Add This Card' you agree to the doxoPAY Terms of Service."  <u>See id.</u>  The "doxoPAY Terms of Service" text appears to have a hyperlink to those terms of service.  <u>Id.</u>

On the final screen and immediately before the payment is processed, a consumer sees in large green text the total amount to be charged.  Compl. at ⁋ 22.  Below that figure exists text that states "Includes $3.99 Payment Delivery Fee" in much smaller, faint gray text.  <u>Id.</u>

Two checkboxes appeared beneath the delivery information and selected payment method.[1]  <u>Id.</u>  The first checkbox concerned a "doxoPLUS Subscription".  <u>Id.</u> at ⁋ 61.  Consumers could purportedly avoid paying the delivery fee by making their payment using doxoPLUS.  <u>Id.</u>  The description continued as follows: "doxoPLUS subscribers pay all their bills without payment delivery fees.  Start today for $5.99 per month (plus tax where applicable).  Cancel anytime.  By selecting the box above you agree to the User Terms of Service."  <u>Id.</u>  Until February 2024, "well after receiving notice of the FTC's investigation, and after receiving the FTC's draft complaint", if consumers clicked on the

---

[1] A screenshot in the Complaint includes only one of the checkboxes, the doxoPLUS Subscription, while the screenshots attached to the Shivers' Declaration include both boxes.  <u>Compare</u> Compl. at ⁋ 22 <u>with</u> Ex. D to Shivers Decl. (docket no. 15-4 at 7) <u>and</u> Ex. E to Shivers Decl. (docket no. 15-5 at 7).

1  "User Terms of Service" hyperlink "in the fine print," Doxo automatically clicked the

2  box without alerting the consumer.[2]  Id. at ¶ 62.[3]

3          Through April 25, 2024, the date the FTC filed its Complaint, text on the Doxo

4  website prominently stated that consumers can avoid Doxo's so called "delivery fees" by

5  subscribing.  Id. at ¶ 63.  The FTC contends that Doxo charged recurring subscription

6  fees while also charging delivery fees, without disclosing this to consumers.  Id.  The

7  FTC further alleges that although Doxo previously displayed the subscription cost in

8  large, bold text next to the checkbox, in or around March 2020 Doxo altered the page to

9  make the cost less noticeable.  Id. at ¶ 64.  Many consumers allegedly failed to notice the

10  moved, shrunken, and unbolded text due to its placement within other small-print

11  disclosures.[4]  Id.  The doxoPLUS checkbox appears to have been removed from the

12  "current" version of the webpage.  See Ex. F to Shivers Decl. (Docket no. 15-6 at 2).

13

14  [2] In its briefing, Defendants repeatedly refer to this event as "the Glitch".  Defendants claim that
   automatically checking the checkbox for consumers who clicked on the terms of service hyperlink was a
15  defect, Doxo contacted all 1,529 potentially affected users, and Doxo offered them all full refunds.
   Shivers Decl. at 7–8 (docket no. 15); Reply at 12 (docket no. 19).  This factual contention squarely
16  contradicts the FTC's well-pleaded allegations in the Complaint and is inappropriate to judicially notice
   or apply the incorporation by reference doctrine to, as discussed below.  The Court, therefore, considers
17  only the Complaint's allegations concerning these events for the purposes of Defendants' Motion to
   Dismiss.

18  [3] Until about June 24, 2024, Doxo apparently made a few changes to this webpage.  See Shivers Decl. at
   11–12 (docket no. 15).  First, the "Delivery Fee" text is no longer in a "faint gray text" and has been
19  enlarged somewhat.  See Ex. E to Shivers Decl. (docket no. 15-5 at 7).  Second, Doxo included more
   specific information about the included "$1 million Identity Theft Protection, Credit Monitoring and
   more" and a hyperlink to learn more about "doxoPLUS benefits."  Id.  According to Defendants, this
20  "current" webpage includes a "FREE payment delivery with your bank account" option alongside the
   existing $3.99 delivery payment, now specifically imposed if the customer uses a credit or debit card.  See
   Ex. F to Shivers Decl (docket no. 15-6 at 2).

21  [4] The FTC asserts that Doxo does not mention anywhere during the enrollment process that it charges
   many doxoPLUS subscribers delivery fees.  Compl. at ¶ 65.  The small text below the clickbox promises
22  that "doxoPLUS subscribers pay all their bills without payment delivery fees," "but in truth Doxo charges
   payment fees to doxoPLUS subscribers—the same fees it charges to non-subscribers—for all credit card
   and many debit card payments."  Id.

23

1  The second checkbox requires consumers to acknowledge the delivery date for

2  payment. Ex. D to Shivers Decl. (docket no. 15-5 at 7). Additional text advises, "If you

3  have received an overdue notice or need to deliver your payment sooner, do not complete

4  payment here. Instead, contact the company directly to make your payment", with a

5  hyperlink to "contact the company". Id.

6  After clicking the "Send Payment" on the final screen, the consumer is

7  immediately charged. Compl. at ₱ 23.

8  **B.    Doxo's alleged deceptive advertising**

9  The FTC claims that Doxo is not an official payment website and that it adds junk

10  fees to consumers' bills. Compl. at p. 7. Many consumers, according to the FTC,

11  navigating Doxo's payment process are unaware that they are being charged by a

12  company that, in most cases, has no relationship with their biller and is not an official

13  payment channel. Id. at ₱ 24. The FTC further alleges that less than 2% of the billers in

14  "Doxo's purported payment network" have authorized Doxo to receive payments on their

15  behalf. Id. Doxo allegedly places its advertisements to appear when consumers search

16  for their billers, designs its advertisements and weblink headlines to resemble the billers'

17  official websites, and structures the subsequent payment flow to reinforce the

18  misimpression. Id. at ₱ 25. For thousands of billers, Doxo's payment links appear at or

19  near the top of consumers' bill pay searches only because Doxo spends millions in

20  advertising to place them there. Id. at ₱ 26.

21  According to the FTC, the advertisements are placed to intercept people explicitly

22  attempting to reach their biller's payment website. Id. at ₱ 27. The titles of these

23

ORDER - 7

advertisements "trick consumers" into thinking that Doxo's advertisements and weblinks represent the biller's actual website.  Id. at ¶ 28.  In most cases, Doxo's headlines mention only the biller's name, not Doxo's.  Id.  Once a consumer clicks the headline, the landing page prominently displays the biller's name, contact information, and, in some cases, the biller's logo—further reinforcing the false impression that Doxo is either the biller itself or its authorized payment platform.  Id. at ¶ 29.

According to the FTC, Doxo's misrepresentation is further bolstered by its many statements throughout the payment process indicating that it has direct information on consumers' bills.  Id. at ¶ 30.  For example, Doxo frequently informs consumers that it "validate[s]" their bill information, offers "[r]eal-time payment tracking" and can apprise customers of due dates, and that payments are made "directly" to their billers.  Id.  In reality, Doxo lacks any direct biller data and relies solely on the information provided by consumers.  Id.  Doxo allegedly cannot "track[]" consumers' most urgent concern—when a biller will actually credit their payments.  Id.  As a Doxo internal document states, "We don't know when payments are posted, and we should never talk about that."  Id.  Doxo's payments are the opposite of "direct[]": in millions of cases, Doxo charges consumers immediately but sends payment to the biller by paper check, delivered only days or weeks later.  Id.

Consumers who navigate to Doxo's homepage or download the Doxo application are also allegedly deceived into thinking that Doxo is an official payment channel for their billers.  Id. at ¶ 32.  The FTC alleges that Doxo falsely claims to have a "network" of billers and the ability to track payments, despite having no direct relationships with

1  most of its purported "network" members and no ability to track payments once they are

2  made.  Id.

3         Additionally, Doxo allegedly misleads consumers about the total cost of their

4  payments.  Id. at ¶ 33.  Throughout the payment process, Doxo represents that consumers

5  are paying the "Amount" due on their bill, when in reality, Doxo adds an undisclosed

6  "delivery fee" that is revealed only in faint gray text on the final payment screen.  Id.  By

7  this point, consumers have already completed multiple steps, including  (1) entering an

8  "Amount" or an "Amount to Pay," (2) inputting bill details, (3) having bill details

9  purportedly "validate[d]," (4) creating a login, (5) selecting a payment method, (6)

10  entering payment information, and (7) proceeding to payment.  Id.

11        The FTC contends that by the time the consumer arrives at the payment screen, he

12  or she has navigated through several different webpages in the payment flow, expending

13  substantial time inputting sensitive personal and financial information.  Id. at ¶ 34.  Many

14  bills are for uneven amounts, the fee disclosure on the final screen is not prominent, and

15  many consumers do not realize that they are paying an amount that exceeds the figure

16  stated on their bill.  Id.  Of the consumers who notice the "inconspicuous, belatedly

17  disclosed fee," many believe they are using an official payment channel, and others

18  wasted time on the payment process.  Id.  While Doxo charges fees for all credit and

19  debit card payments, and for many payments via bank account, billers typically do not

20  charge fees for bill payments made to them directly.  Id. at ¶ 35.  Consumers have thus

21  paid millions of dollars in Doxo's delivery fees that they would not otherwise have been

22  charged.  Id.

23

**C.**  **Doxo's internal surveys, direct consumer complaints, and biller complaints**

The FTC asserts that Doxo's own internal surveys confirm that many consumers are unaware they have a Doxo account or mistakenly believe that using Doxo is required to pay their bill.  Compl. at ¶ 37.  For example, the results of an internal 2022 survey showed that even among "heavy users", consumers who made at least eight payments to Doxo, approximately 30% mistakenly believed that "Doxo was the only way to pay their bills."  Id.  Consistent with these surveys, tens of thousands of consumers have complained directly to Doxo, reporting that they were deceived and duped into paying Doxo's delivery fees.  Id. at ¶ 38.  Another 2022 internal survey showed that approximately 40% of consumers charged for a doxoPLUS subscription were not aware that they had a doxoPLUS account.  Id. at ¶ 69.  And many other consumers, regardless of whether they knew they had a doxoPLUS account, were unaware that the account came with recurring and bill payment fees.  Id.

Many consumers allegedly reported that they were deceived by Doxo into believing they were paying their bills directly to their biller.  See id. at ¶ 39 (quoting seven example reports).  Other consumers have reported that they were tricked into thinking that Doxo was their billers' chosen payment platform.  See id. at ¶ 40 (quoting four example reports).  Many consumers have also complained about Doxo "'suddenly' adding fees at the end of the payment process."  See id. at ¶ 41 (quoting six example reports).[5]  Id.

---

[5] The FTC alleges that many consumers discover that Doxo is not an official payment channel only when their payment never arrives at their biller.  Compl. at ¶ 42.  Consumers have double paid their bills, once to Doxo and once to the biller, to avoid service cutoffs.  Id.

The FTC also asserts that numerous billers have complained directly to Doxo, demanding that it stop using their names and logos, cease collecting payments on their behalf, or remove misleading elements from its website.  Id. at ¶ 48.  In April 2020, a nationwide network of urgent care centers wrote to Parks stating that Doxo's advertisements and website were giving customers "false assurance that somehow Doxo is affiliated with or sponsored by" the company.  Id. at ¶ 49.  The company demanded removal from Doxo's directory and the deletion of the company's information from Doxo's website.  Id.  Doxo refused.  Id.  Doxo universally rejects similar requests.  Id. at ¶ 50.  One Doxo employee allegedly stated that "we hear complaints from [billers] fairly often on the support side and it doesn't change anything, we don't remove them/stop using their name."  Id.

In response to Doxo's alleged misrepresentations and in an effort to protect consumers from Doxo's deception, hundreds of billers have publicly warned consumers that Doxo, as one entity stated, "misleads members into thinking they are part of us."  Id. at ¶ 51.  Many of the billers' public statements explicitly note that Doxo's website is deceptively designed to appear like the billers' authorized payment site.  See id. at ¶ 52 (listing six example statements).  Additionally, the billers' statements typically note that Doxo charges extra fees that consumers will not incur if they pay their bill directly.  Id. at ¶ 53.

The FTC alleges that as part of a 2021 compliance review, employees of a search engine concluded that Doxo's advertising headlines between Doxo and the biller suggest that "Bill Pay is a service provided by [the biller]."  Id. at ¶ 54.  One employee allegedly

remarked that Doxo's advertisements were "super misleading": "the copy makes it seem like you are working with a trusted brand that [Doxo] already ha[s] a relationship with vs. a middle man." Id. at ❡ 55.  Another employee observed that Doxo's advertisements placed "brand term at the top which makes you think you are on an authorized site." Id. Summarizing Doxo's conduct, the employee stated that "the thing that kills me is they know *exactly* what they are doing". Id.  The search engine's compliance review contained findings that Doxo had violated multiple policies. Id. at ❡ 57.  More than 1,500 companies allegedly reported that Doxo was using their trademarks without permission and Doxo was "among the highest trademark complaint receivers." Id. at ❡ 56. Compliance personnel found that Doxo had violated several of the search engine's policies: Doxo's advertisements and URLs were misleading, Doxo's use of billers' names and logos falsely implied a relationship with the biller, and Doxo had failed to disclose terms in a clear and conspicuous manner. Id. at ❡ 57.

**Discussion**

**A.    Standard of Review**

Although a complaint challenged by a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must indicate more than mere speculation of a right to relief. Id.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at

558.  A complaint may be lacking for one of two reasons: (i) absence of a cognizable

legal theory, or (ii) insufficient facts under a cognizable legal claim.  <u>Robertson v. Dean</u>

<u>Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to

dismiss, the Court must assume the truth of the plaintiff's allegations and draw all

reasonable inferences in the plaintiff's favor.  <u>Usher v. City of Los Angeles</u>, 828 F.2d

556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint

sufficiently state a "plausible" ground for relief.  <u>Twombly</u>, 550 U.S. at 570.

**B.** **<u>Scope of Review</u>**

The Court first addresses the scope of materials to be considered.  Defendants

attached a declaration to their Motion to Dismiss.  <u>See</u> Shivers Decl. (docket no. 15).

Attached to the Shivers Declaration are several exhibits.  These exhibits include (1) a

letter dated April 22, 2024, from Doxo to the FTC concerning "the steps that Doxo is

proactively taking to respond to the issues raised in the draft complaint that the FTC sent

to Doxo", (2) a screenshot of Labcorp's landing page on Doxo's website prior to Doxo's

voluntary changes to its website in response to the FTC's investigation, (3) a screenshot

of Labcorp's current landing page on Doxo's website, (4) a series of screenshots of all

webpages in Doxo's checkout process for the biller Lake Panasoffkee Water Association

prior to Doxo's voluntary changes to its website in response to the FTC's investigation,

(5) a series of screenshots of all current webpages in Doxo's checkout process for the

biller Lake Panasoffkee Water Association, (6) a screenshot of the current review and

send payment page of Doxo's checkout process for a doxoPLUS subscriber for the biller

Lake Panasoffkee Water Association, and (7) a copy of the User Terms of Service for

1   Doxo's doxoPLUS subscription service.  Shivers Decl. at 9–12 (docket no. 15); Exs.

2   A–G to Shiver Decl. (docket nos. 15-1–15-7).  Defendants ask the Court to either

3   incorporate these documents by reference or to judicially notice them.  See Motion at

4   14 n.3 (docket no. 14).  Defendants also suggest the Court may consider the entirety of

5   Doxo's website under the incorporation by reference doctrine.  Id. at 11.  The FTC

6   generally claims Defendants' attachments are inappropriate for consideration in a motion

7   to dismiss, offers incomplete information on Doxo's practices from October 2023

8   onward, and presents nothing from before that date, but the FTC generally does not

9   contest the authenticity of the exhibits.  See Opposition at 11 (docket no. 17).

10          In ruling on a 12(b)(6) motion, a court may generally consider only allegations

11   contained in the pleadings, exhibits attached to the complaint, and matters properly

12   subject to judicial notice.  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).

13   When "matters outside the pleading are presented to and not excluded by the court," the

14   12(b)(6) motion converts into a motion for summary judgment under Rule 56.  Khoja v.

15   Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018) (quoting Fed. R. Civ. P.

16   12(d)).  Incorporation-by-reference is a judicially created doctrine that treats certain

17   documents as though they are part of the complaint itself.  Id. at 1002.  The doctrine

18   prevents plaintiffs from selecting only portions of documents that support their claims,

19   while omitting portions of those very documents that weaken—or doom—their claims.

20   Id.  A defendant may seek to incorporate a document into the complaint "if the plaintiff

21   refers extensively to the document or the document forms the basis of the plaintiff's

22   claim."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  A court "may

23

1    assume that [an incorporated document's] contents are true for purposes of a motion to

2    dismiss under Rule 12(b)(6)."  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006)

3    (internal quotation marks omitted).  A court may consider evidence on which the

4    "complaint necessarily relies if: (1) the complaint refers to the document; (2) the

5    document is central to the plaintiff's claim; and (3) no party questions the authenticity of

6    the copy attached to the 12(b)(6) motion."  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d

7    992, 998 (9th Cir. 2010).

8        The Court concludes that it is appropriate to incorporate by reference the

9    webpages identified in Exhibits B–F and the doxoPLUS subscription terms of use

10   identified in Exhibit G attached to the Shivers Declaration.  See CMRE Fin. Servs. Inc. v.

11   Doxo Inc., 2022 WL 16701259, *4 (W.D. Wash. Oct. 7, 2022) (considering all aspects of

12   Doxo's bill payment platform because the platform's allegedly deceptive nature formed

13   the basis of the plaintiffs' lawsuit).  The Court declines to consider Exhibit A attached to

14   Shivers Declaration because the supposed changes discussed in the exhibit are already

15   reflected in the other exhibits and Defendants do not otherwise reference it in its briefing

16   for any other proposition.

17       Defendants also cite to the Shivers Declaration for "[a] description of illustrative

18   customer flows through the website", to claim that Doxo addressed the FTC's claims

19   through several changes to the website, to compare its payment delivery method to those

20   purportedly used by bank and other independent bill-pay services "for decades", and to

21   describe the doxoPLUS subscription service.  Motion at 6–7, 10–11, 24 (docket no. 14).

22   Judicial notice and the incorporation by reference doctrine are inappropriate vehicles to

23

1  contradict allegations raised in the FTC's complaint.  See Khoja, 899 F.3d at 1003.

2  Therefore, other than the exhibits identified above, the Court will not consider any other

3  portions of the Shivers Declaration.  The Court also declines to review the entirety of

4  Doxo's website, because Defendants failed to identify any other webpages that may be

5  relevant to the FTC's claims and Defendants' Motion to Dismiss.

6  **C.    The FTCA claims**

7         The FTC asserts its first two claims under the FTCA.[6]  See Compl. at ¶¶ 76–81.

8  Under the FTCA, unfair methods of competition in or affecting commerce, and unfair or

9  deceptive acts or practices in or affecting commerce, are unlawful.  15 U.S.C. § 45(a)(1).

10 The FTC is empowered and directed to prevent individuals and certain entities from

11 engaging in such methods, acts, or practices.  Id. at § 45(a)(2).  "An act or practice is

12 deceptive if first, there is a representation, omission, or practice that, second, is likely to

13 mislead consumers acting reasonably under the circumstances, and third, the

14

15

---

16 [6] The parties disagree about whether Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to violations of Section 5 of the FTCA in cases where the FTC alleges that the defendant violated

17 the Act by deceiving consumers with misleading or false statements.  See Motion at 14 (docket no. 14); Opposition at 9 n.1 (docket no. 17).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and

18 other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and

19 not just deny that they have done anything wrong."  In re Finjan Holdings, Inc., 58 F.4th 1048, 1057 (9th Cir. 2023) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).  In other words, the complaint must "state the time, place, and specific content of the false representations as well as the

20 identities of the parties to the misrepresentation."  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004).  The Complaint meets the heightened pleading standard for Counts I and II, and the Court

21 need not determine whether Rule 9(b) applies.  See Fed. Trade Comm'n v. Amazon.com, Inc., 735 F. Supp. 3d 1297, 1325 (W.D. Wash. 2024) ("Amazon.com"); United States v. MyLife.com, Inc., 499 F.

22 Supp. 3d 757, 761 (C.D. Cal. 2020) (stating that Rule 9(b) requires no more where the complaint specified a timeframe, facts that describe the particular conduct that violates the laws cited, and why that

23 conduct violates those laws).

representation, omission, or practice is material." F.T.C. v. Stefanchik, 559 F.3d 924,
928 (9th Cir. 2009) (quoting F.T.C. v. Gill, 265 F.3d 944, 950 (9th Cir. 2001)) (internal
quotation marks omitted). A misleading impression created by a solicitation is material if
it "involves information that is important to consumers and, hence, likely to affect their
choice of, or conduct regarding, a product." F.T.C. v. Cyberspace.Com LLC, 453 F.3d
1196, 1201 (9th Cir. 2006). Deception may be found based on the "net impression"
created by a representation. Stefanchik, 559 F.3d at 928. Proof of actual deception is
unnecessary to establish a violation of Section 5. Trans World Accts., Inc. v. F.T.C., 594
F.2d 212, 214 (9th Cir. 1979). Section 5 only requires a showing that misrepresentations
possess a tendency to deceive. See id.

The public is not under any duty to make reasonable inquiry into the truth of
advertising. Resort Car Rental Sys., Inc. v. F. T. C., 518 F.2d 962, 964 (9th Cir. 1975).
The FTCA is violated if the advertising induces the first contact through deception, even
if the buyer later becomes fully informed before entering the contract. Id. Advertising
capable of being interpreted in a misleading way should be construed against the
advertiser. Id.

**1.      Count I: Deceptive Representation that Doxo is an Official Payment
Channel**

As to Count I, the FTC claims that "[i]n numerous instances in connection with
the advertising, marketing, promotion, or provision of bill payments services, Defendants
have represented directly or indirectly, expressly or by implication, that Doxo is an
official payment channel for consumers' billers", these representations "are false or

1    misleading", and they "constitute a deceptive act or practice in violation of Section 5(a)

2    of the FTC Act, 15 U.S.C. § 45(a)."  Compl. at ▯ 79.  Defendants argue that "[a]s a matter

3    of law, a reasonable consumer could not plausibly believe these things."  Motion at 15

4    (docket no. 14).  The FTC alleged sufficient facts to state a plausible claim under the

5    FTCA that Defendants' representations that Doxo is an "official payment channel" is

6    deceptive.

7         Defendants rely on several disclaimers scattered throughout Doxo's payment

8    process to support their argument that no reasonable consumer could be deceived.  See

9    Motion at 15–18 (docket no. 14).  But "[d]isclaimers or qualifications in any particular

10   ad[vertisement] are not adequate to avoid liability unless they are sufficiently prominent

11   and unambiguous to change the apparent meaning of the claims and to leave an accurate

12   impression."  Removatron Int'l Corp. v. FTC, 884 F.2d 1489, 1496–97 (1st Cir. 1989)

13   ("Anything less is only likely to cause confusion by creating contradictory double

14   meanings.").  Courts across the country have determined that, where a disclaimer is

15   buried in fine print and is without accentuation, it is insufficient to alter the net

16   impression.  See Fed. Trade Comm'n v. Fleetcor Techs., Inc., 620 F. Supp. 3d 1268,

17   1295 (N.D. Ga. 2022) (collecting cases).  In CMRE, a case Defendants heavily rely on,

18   the court concluded that Doxo's "numerous disclaimers" appearing alongside other items

19   suggested that "it is not plausible that any reasonable consumer accustomed to navigating

20   the internet would be confused".  2022 WL 16701259, at *9.  CMRE is distinguishable

21   because that case involved claims of unfair competition under the Lanham Act, not the

22   FTCA, and the CMRE plaintiffs did not allege "any actual confusion".  Id. at *1, 9;

23

ORDER - 18

1    accord <u>Farmers Mut. Ins. Co. of Nebraska v. Doxo, Inc.</u>, 2022 WL 20678372, at *3 (D.

2    Neb. Dec. 15, 2022) (noting that for a motion for judgment on the pleadings in a case

3    involving a claim brought under the Lanham Act, the plaintiff was entitled to an

4    inference that its customers, who were actually confused about the ownership of Doxo's

5    website, were reasonable despite the presence of disclaimers).  In this case, the Complaint

6    identified Doxo's own internal surveys and several consumer reports that expressed

7    confusion as to whether Doxo was an official payment platform for their billers.[7]  Compl.

8    at ¶¶ 37–40.  The FTC alleges Doxo's advertising efforts lead to misleading headlines

9    being prominently displayed in search engine results, and subsequent attempts to remedy

10   "first contact through deception," through disclaimers, does not preclude violating the

11   FTCA.  <u>Resort Car</u>, 518 F.2d at 964.

12       Defendants argue the Complaint fails to allege that Doxo made a material

13   representation likely to mislead a reasonable consumer, because "Doxo does not say it is

14   a biller's official payment channel."  Reply at 3 (docket no. 19).  But the Complaint

15   identifies specific consumer statements that reflect that consumers "were deceived by

16   Doxo into believing that they were paying their bills directly to their biller."  Compl. at

---

18   [7] In a Notice of Supplemental Authority, docket no. 27, Defendants cite to <u>Lerner & Rowe PC v. Brown
19   Engstrand & Shely LLC</u>, 119 F.4th 711 (9th Cir. 2024).  That case involved Lanham Act claims,
     including unfair competition, state trademark infringement and unfair competition claims, and an unjust
     enrichment claim.  <u>Id.</u> at 717.  The district court granted summary judgment as all claims, and the Ninth
20   Circuit affirmed.  <u>Id.</u> at 717, 726.  The court recognized that if an "appreciable number" of people are
     confused, that fact alone might entitle the plaintiff *to a trial* on the likelihood of confusion.  <u>Id.</u> at 719
21   (emphasis added).  The court calculated the proportion of all consumers who were actually confused at
     0.216%, concluded this standalone evidence of actual confusion was de minimis, and also concluded that
     the calculated figure contradicted the plaintiff's assertions that the advertisements were likely to confuse
22   an appreciable number of consumers.  <u>Id.</u> at 720.  <u>Lerner</u> is distinguishable.  This case does not involve
     Lanham Act claims and the applicable standards are different because before the Court is Defendants'
23   Motion to Dismiss, not a motion for summary judgment.

ORDER - 19

1   ⁋ 39.  Billers' efforts to publicly dissociate themselves from Doxo have allegedly

2   included statements noting that Doxo charges extra fees that consumers will not incur if

3   they pay their bill directly.  Id. at ⁋ 53.  The option to avoid additional fees is important to

4   consumers and likely to affect their choice or using Doxo's services.  Doxo's alleged

5   representations that it serves as an official payment channel for billers is therefore

6   material, regardless of Doxo's explicit statements or lack thereof.

7        Defendants' Motion to Dismiss as to Count I is DENIED.

8        **2.    Count II: Deceptive representation regarding payment amount**

9        As to Count II, the FTC claims that "[i]n numerous instances in connection with

10  the advertising, marketing, promotion, or provision of bill payments services, Defendants

11  have represented directly or indirectly, expressly or by implication, that consumers will

12  pay the amount on their bill", these representations "are false or misleading", and they

13  "constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15

14  U.S.C. § 45(a)."  Compl. at ⁋⁋ 79–81.  Defendants claim no reasonable consumer could

15  be misled to believe that "consumers will pay the amount on their bill".  See Motion at 19

16  (docket no. 14).

17       The FTC alleged sufficient facts to state a plausible claim under the FTCA that

18  Defendants' representations that consumers pay the amount on their bill is deceptive.

19  Defendants again rely on the several disclaimers scattered throughout Doxo's payment

20  process to support their argument that no reasonable consumer could be deceived.  See

21  Motion at 15–18 (docket no. 14).  But according to the Complaint, consumers have

22

23

1  complained about Doxo "suddenly" adding fees at the end of the payment process and

2  failing to provide a true total of processing fees.  See Compl. at ⁋ 41.

3      Defendants argue the Complaint fails to allege that Doxo made a material

4  representation likely to mislead a reasonable consumer, because Doxo does not say

5  "users never pay a fee" and "Amount" is not a material mispresentation.  Reply at 3

6  (docket no. 19).  The FTC alleges that consumers believe they are paying the amount on

7  their bills but are surprised by the added fees at the end of the transaction.  Compl. at

8  ⁋ 41.  Billers allegedly issued public statements noting that Doxo charges extra fees that

9  consumers will not incur if they pay their bill directly.  Id. at ⁋ 52.  The option to avoid

10 additional fees is important to consumers and likely to affect their choice of using Doxo's

11 services.  Doxo's alleged representations that it pays the amount on a consumer's bill is

12 therefore material, regardless of Doxo's explicit statements or lack thereof.

13     Defendants' Motion to Dismiss as to Count II is DENIED.

14 **D.    The FTC's GLBA Claim: Use of false statements to obtain customer financial**

15 **information**

16     Defendants argue Count III fails because the FTC has not alleged that Doxo has

17 made a "literally false statement" as required by the GLBA.  Motion at 20–22 (docket

18 no. 14); Reply at 6 (docket no. 19).  The FTC contends that the "representations that

19 serve as the basis for Count III . . . are flatly false—and Doxo does not claim otherwise."

20 Opposition at 15 (docket no. 17).

21     The GLBA prohibits obtaining or causing the disclosure of "customer information

22 of a financial institution" through a false, fictitious, or fraudulent statement or

23

1   representation to a customer of a financial institution.  15 U.S.C. § 6821(a)(2).

2   "Customer information of a financial institution" is defined as any information

3   maintained by or for a financial institution which is derived from the relationship

4   between the institution and its customers.  Id. at § 6827(2).  A "[f]inancial institution"

5   includes any entity engaged in providing financial services to customers who maintain an

6   account or other financial account or relationship with the institution.  Id. at

7   § 6827(4)(A).

8        The FTC alleged sufficient facts to state a plausible claim under the GLBA that

9   Doxo made false representations to obtain or cause the disclosure of customer

10  information of a financial institution.  Defendants' argument focuses too narrowly on the

11  "false statement" aspect of a GLBA claim.  The statute extends to false, fictitious, or

12  fraudulent *representations*, so the FTC need not establish that Doxo made a "literally

13  false statement" to proceed.  See 15 U.S.C. § 6821(a).  In its Complaint, the FTC

14  sufficiently alleges that Doxo induced consumers to disclose financial information—such

15  as bank account and routing numbers—through allegedly "false representations" that

16  Doxo was an official payment channel for billers and that it would pay the full amount of

17  consumers' bills.  See Compl. at ⁋ 85.

18       Defendants' Motion to Dismiss as to Count III is DENIED.

19  **E.    The FTC's ROSCA claims**

20       The FTC asserts Counts IV and V under ROSCA.  Compl. at ⁋⁋ 91–94.

21

22

23

ROSCA prohibits the sale of goods or services on the Internet through a negative option feature without meeting certain requirements to protect consumers.[8]  15 U.S.C. § 8403.  In an offer or agreement to sell or provide any goods or services, a "negative option feature" is "a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w).  A seller may only use a negative option feature if the seller (1) "provides text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information;" (2) "obtains a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction;" and (3) "provides simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account."  15 U.S.C. §§ 8403(1)–(3).  The FTC claims that Doxo violated the first two requirements.  See Compl. at ¶¶ 91–94.

### 1.    The "negative option feature"

The parties disagree as to whether the doxoPLUS subscriptions utilizes a negative option feature.  Motion at 22 (docket no. 14); Opposition at 12 (docket no. 17).  This is a threshold question to determining whether ROSCA's requirements apply.  Accordingly, the Court addresses this issue first.

---

[8] The FTC's enforcement authority under ROSCA is consistent with its powers under the FTCA.  See 15 U.S.C. § 8404(a).

As stated above, a negative option feature exists when a consumer's silence or failure to act is treated as an acceptance of the offer. 16 C.F.R. § 310.2(w).  The FTC alleges that the doxoPLUS subscription, which charges consumers $5.99 per month (plus any applicable taxes) unless they affirmatively cancel, falls within this definition. Compl. at ⁋ 22. doxoPLUS's own terms confirm that the subscription automatically renews, as consumers are told they may "[c]ancel anytime."  Id.

Defendants' attempt to limit a straightforward application of the "negative option feature" definition to the facts of this case.  These efforts are unpersuasive.  The statutory definition is not as narrow as Defendants argue, and courts have applied it broadly to renewal subscriptions.  See United States v. MyLife.com, Inc., 499 F. Supp. 3d 757, 761–62 (C.D. Cal. 2020); see also F.T.C. v. Health Formulas, LLC, 2015 WL 2130504, at *16 (D. Nev. May 6, 2015) ("Defendants' recurring payment plans, in which customers are automatically enrolled and through which they are charged if they do nothing, constitute negative option features within the meaning of 16 C.F.R. § 310.2".).  The Complaint sufficiently alleges that doxoPLUS contains a negative option feature subject to ROSCA's requirements.

### 2.    Count IV: Failure to Provide Required Disclosures

As to Count IV, the FTC claims that Defendants have failed to disclose clearly and conspicuously all material terms of the transaction, including subscription and bill payment fees, before obtaining consumers' billing information, as required by 15 U.S.C. § 8403(1) of ROSCA.  Compl. at ⁋ 91.  Defendants argue this claim fails because Doxo

1  "clearly and conspicuously discloses all material terms of the subscription, including the

2  doxoPLUS subscription and bill payment fees."  Motion at 24 (docket no. 14).

3      ROSCA does not define "clearly and conspicuously", so courts have turned to

4  other statutes that define similar terms.  See Amazon.com, 735 F. Supp. 3d at 1314–15

5  (collecting cases).  Under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x, and

6  Truth in Lending Act, 15 U.S.C. §§ 1601–1616, "clear" means "reasonably

7  understandable" and "conspicuous" means "readily noticeable to the consumer."  Id. at

8  1315 (quoting Gilberg v. California Check Cashing Stores, LLC, 913 F.3d 1169, 1176

9  (9th Cir. 2019)) (internal quotation marks omitted).  Under the Uniform Commercial

10  Code, a term is considered conspicuous when it is "so written, displayed, or presented

11  that a reasonable person against which it is to operate ought to have noticed it."  Id.;

12  U.C.C. § 1–201(b)(10).

13      The FTC alleged sufficient facts to state a plausible claim under ROSCA that

14  Doxo failed to clearly and conspicuously disclose all material terms of doxoPLUS.  The

15  existence of the doxoPLUS subscription and its terms are revealed to consumers only at

16  the very last step of Doxo's payment process.  In previous steps, consumers select a

17  payment method and input their payment and billing information.  The FTC's allegations

18  concerning this sequence of events alone are sufficient to plausibly state a claim under 15

19  U.S.C. § 8403 of ROSCA.  Additionally, while the "current" webpage for doxoPLUS

20  subscribers promotes "free delivery" for doxoPLUS members, this benefit applies only to

21  bank account payments, whereas credit and debit card payments still incur a $3.99

22  delivery fee.  See Ex. F to Shivers Decl. (docket no. 15-6 at 2).  In the screenshot of the

23

1   webpage in the Complaint, the discrepancy between payment methods is not explained in

2   the text box under the "doxoPLUS Subscription" checkbox, which states subscribers "pay

3   all their bills without payment delivery fees."  Compl. at ℙ 65.

4         Defendants' Motion to Dismiss as to Count IV is DENIED.

5         **3.    Count V: Failure to Obtain Express Informed Consent Before Charges**

6         As to Count V, the FTC claims that Defendants have failed to obtain a consumer's

7   express informed consent before charging the consumer's credit card, debit card, bank

8   account, or other financial account for products or services through such transaction, in

9   violation of 15 U.S.C. § 8403(2).  Compl. at ℙ 93.  Defendants argue Count V fails to

10  state a claim.  Motion at 27 (docket no. 14).

11        In ROSCA cases, courts have found that when the material terms are not clearly

12  and conspicuously disclosed, "these inadequate disclosures constitute evidence that

13  [d]efendants often do not obtain consumers' express informed consent before charging

14  their cards or accounts."  Amazon.com, 735 F. Supp. 3d at 1321 (quoting Health

15  Formulas, 2015 WL 2130504, at *16).  Thus, the failure to disclose material terms clearly

16  and conspicuously . . . means that the defendant did not receive consumers' "express

17  informed consent."  Id.

18        The FTC alleged sufficient facts to state a plausible claim under ROSCA that

19  Doxo failed to obtain consumers' express informed consent.  Under Amazon.com and

20  based on the Court's analysis of Count IV, Doxo's failure to disclose material terms

21  clearly and conspicuously "means that" Doxo did not receive consumers' express

22  informed consent.  See id.  Additionally, the FTC alleges that until February 2024, the

23

1  doxoPLUS subscription checkbox was automatically checked for consumers who clicked

2  on the "User Terms of Service" hyperlink.  Compl. at ℙ 62.  Consumers who proceeded to

3  make their one-time bill payment were subsequently charged for a subscription even

4  though they had not clicked on the box that purported to seek consent to a subscription.

5  Inadvertently checking the doxoPLUS subscription box cannot be reasonably

6  characterized as consumers providing Doxo with express informed consent.

7      Defendants contend that consumers may change or confirm the billing information

8  after signing up for a doxoPLUS subscription, see Reply at 13–14 (docket no. 19), but

9  nowhere in the Complaint nor the materials the Court incorporated by reference is that

10  subsequent payment confirmation procedure identified.

11      Defendants' Motion to Dismiss as to Count V is DENIED.

12  **F.    The FTC's claims against Parks**

13      Defendants argue that Parks should be dismissed from this case because the FTC

14  failed to connect allegations against Parks to Doxo's alleged misrepresentations.  Motion

15  at 28 (docket no. 14).  The FTC contends the Complaint alleges Parks had authority to

16  control Doxo's relevant practices and actively participated in the misconduct.  Opposition

17  at 25 (docket no. 17).

18      Individuals may be held liable based on corporate entity violations of the FTCA if

19  (1) the corporation committed misrepresentations of a kind usually relied on by a

20  reasonably prudent person and resulted in consumer injury, and (2) individuals

21  participated directly in the violations or had authority to control the entities.  F.T.C. v.

22

23

ORDER - 27

1    _Grant Connect, LLC_, 763 F.3d 1094, 1101 (9th Cir. 2014).  Courts apply the same

2    standard to ROSCA violations.  See _Amazon.com_, 735 F. Supp. 3d at 1326–27.

3        The FTC's allegations are sufficient to state plausible claims against Parks.  The

4    Court begins by summarizing those allegations.  Parks received direct notice of consumer

5    complaints and personally responded to consumers who reported they were misled by

6    Doxo.  Compl. at ⁋ 43.  For example, in July 2020, Parks responded to an inquiry from a

7    state attorney general's office regarding Doxo's advertising and billing practices.  Id. at

8    ⁋ 43.  Parks acknowledged under oath that Doxo received complaints from consumers

9    regarding "the relationship between Doxo and a [biller]."  Id. at ⁋ 44.  Further, in

10   February 2021, Parks was informed that a credit card company had terminated Doxo's

11   access to its network based in part on consumer complaints that Doxo had "intercepted

12   payments online to upcharge the customers."  Id. at ⁋ 45.  Parks negotiated directly with

13   the credit card company to regain access to the network without any changes to Doxo's

14   advertisements or payment flows.  Id.  Parks, alongside Shivers, was "directly involved"

15   in discussions regarding what changes to make in response to the search engine's

16   findings and discussed proposed changes with search engine employees.  Id. at ⁋ 59.  As

17   a result, Doxo's advertisements and payment flows remained substantially identical to the

18   ones identified as "super misleading" in the search engine's 2021 review.  Id.  In a 2019

19   presentation attended by Parks and Shivers, Doxo executives informed the board that a

20   "large number of users who enter doxoPLUS as part of the pay flow[] are . . . confused

21   about the value proposition."  Id. at ⁋ 66.  The presentation also noted that there would be

22   "much less risk of confusion or accidental subscriptions" if Doxo presented doxoPLUS as

23

a standalone offer and not part of the bill payment flow.  Id.  In April 2020, Parks and

Shivers were informed that 65% of doxoPLUS subscribers who cancelled either "did not

know they had a subscription or (wrongly) thought a subscription was required to use

Doxo."  Id. at ¶ 68.  At a subsequent board meeting, attended by Parks and Shivers, Doxo

set a "long-term goal to eliminate users enrolling in doxoPLUS if [they] don't understand

the offer."  Id.  In the "near term," though, the company opted to keep the enrollment

flow as-is to preserve doxoPLUS subscription rates.  Id.

     The Complaint sets forth allegations that sufficiently state Parks' individual

liability under Rule 9(b)'s heightened pleading standard, see supra n.6, as to the FTCA

claims and under Rule 8(a)[9] as to the remaining claims.  The Court addressed above

Doxo's alleged misrepresentations.  The FTC pleaded sufficient allegations that Parks

participated directly in Doxo's violations or had authority to control Doxo.

     Defendants' Motion to Dismiss Parks as a defendant is DENIED.

## Conclusion

     For the foregoing reasons, the Court ORDERS:

     (1)    Defendants' Motion to Dismiss, docket no. 14, is DENIED. [10]

---

[9] Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief".

[10] Defendants argue that injunctive relief is moot under Counts I, II, and V, because of the changes made to their website.  See Motion at 5–12, 21 (docket no. 14).  But whether the steps taken by Doxo have since cured all alleged deceptive acts or practices "is a question of fact not properly resolved on a motion to dismiss."  F.T.C. v. Amazon.com, Inc., 71 F. Supp. 3d 1158, 1168 (W.D. Wash. 2014) ("Even if the unlawful practices have ceased, the Ninth Circuit has established that injunctive relief may still be appropriate.").  It is unnecessary at this time for the Court to consider Defendants' alternative argument that monetary damages are not available under the FTCA.

1        (2)    The parties shall file a joint status report within 14 days of this Order.  The

2    joint status report shall address the parties' proposed trial date and related pretrial

3    deadlines.  <u>See</u> Joint Status Report (docket no. 20).

4        (3)    The Clerk is directed to send a copy of this Order to all counsel of record.

5    IT IS SO ORDERED.

6    Dated this 21st day of March, 2025.

7

8                        Thomas S. Zilly
                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 30