UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

DOXO, INC., a corporation; STEVE
SHIVERS, individually and as an
officer of DOXO, INC.; and ROGER
PARKS, individually and as an officer
of DOXO, INC.,

Defendants.

C24-0569 TSZ

ORDER

THIS MATTER comes before the Court on the Federal Trade Commission's motions to exclude expert witnesses David True, docket no. 99, Ann Schlosser, docket no. 102, and Brian Sowers, docket no. 101; the Defendants' Unopposed Motion to Seal, docket no. 85; and the Federal Trade Commission's Motion to File Under Seal, docket no. 131.  Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following order.

The Court will first address the motions concerning expert witnesses before turning to the motions to seal.

ORDER - 1

**A.**        <u>**Motions to Exclude Expert Witnesses**</u>

The Court previously denied, via Minute Order, the motions to exclude expert witnesses David True, docket no. 99, and Ann Schlosser, docket no. 102, brought by the Federal Trade Commission ("FTC"). <u>See</u> Minute Order at 2 (docket no. 173). During the hearing on March 16, 2026, the Court denied in part and granted in part the FTC's motion to exclude expert witness Brian Sowers, docket no. 101. <u>See</u> Minutes (docket no. 176). The Court now explains its rulings on these motions.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. <u>Engilis v. Monsanto Co.</u>, 151 F.4th 1040, 1047 (9th Cir. 2025). Rule 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court" four criteria on a more likely than not basis. "Rule 702 is concerned with 'the soundness of the expert's methodology,' rather than 'the correctness of the expert's conclusions.'" <u>Engilis</u>, 151 F.4th at 1050 (quoting <u>Primiano v. Cook</u>, 598 F.3d 558, 564 (9th Cir. 2010)).

Trial judges are tasked with ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 597 (1993). Generally, "[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry" and "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." <u>Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.</u>, 738 F.3d 960, 969 (9th Cir. 2013). "Expert testimony is inadmissible if it concerns factual issues within

ORDER - 2

the knowledge and experience of ordinary lay people because it would not assist the trier of fact in analyzing the evidence." Santiago Salas v. PPG Architectural Finishes, Inc., 2019 WL 399029, at *1 (W.D. Wash. Jan. 31, 2019). Nevertheless, expert testimony need only provide "appreciable help" to the jury to be admissible. United States Fid. & Guar. Co. v. Ulbricht, 576 F. Supp. 3d 850, 861 (W.D. Wash. 2021).

### 1. David True

David True, a consumer payments expert, summarized his opinions as follows: (1) Defendant Doxo, Inc. ("Doxo") allows consumers to choose from a wide variety of funding mechanisms for bill pay; (2) Doxo remits payments to billers either through direct deposit, the Mastercard Remote Payment and Presentment Service ("RPPS"), or check; (3) Doxo's remittance methods are commonly used, including by bank bill pay services; (4) convenience fees are ubiquitous in bill pay and are routinely charged by billers and/or their preferred payment channels; (5) Doxo's practices of disputing non-fraudulent chargebacks is normal and an expected part of being a merchant that accepts card payments; and (6) although a small number of billers have posted warnings about Doxo, the substance of those warnings is often questionable, potentially self-interested, or the product of misunderstanding. True Report at ₧₧ 17–22, Attach. 403 to Doty Decl. (docket no. 92-3). The FTC argues that True's testimony is inadmissible because it is irrelevant and unreliable. Mot. at 1 (docket no. 99).

### (i) True's qualifications

The FTC does not appear to challenge True's qualifications, noting only that, although True "has industry experience advising businesses about payments," he has

ORDER - 3

limited experience and "identifies no experience or expertise related to consumers' perceptions of advertisements or businesses' compliance with consumer protection law." Mot. at 1 (docket no. 99).

David True is a consumer payments expert with over 35 years of experience working with card issuers, networks, merchants, processors, and financial technology firms. True Report at ℙ 5, Attach. 403 to Doty Decl. (docket no. 92-3). Over the course of his career, he has gained experience in payments strategy, marketing, new product development, operations, and finance. Id. True, through his consulting firm, works with companies to help them with payments, transactions, and financial technology-related issues. Id.

The Court finds that True is qualified, based on his knowledge and experience, to give relevant and reliable expert testimony. The FTC cites no cases in support of its proposal to define True's prior experience in the payments industry so narrowly. True possesses "at least the minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony" on the consumer payments industry. Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994). Whether True has the "knowledge and experience" to offer relevant reliable expert testimony is not, however, the end of the inquiry; the Court must further evaluate whether he is able to do so in this case. Ulbricht, 576 F. Supp. 3d at 857 (quoting Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004)).

/ / /

/ / /

ORDER - 4

**(ii)** **The relevance of True's proffered testimony**

The FTC argues that True's report contains irrelevant matters that have no bearing on whether Defendants violated the FTC Act, Gramm-Leach-Bliley Act, and the Restore Online Shoppers' Confidence Act.  See Mot. at 8–9 (docket no. 99).  The FTC relies on chargeback rates and Doxo's disputes with credit card companies in support of its case against Defendants.  True's testimony in his report concerning industry standards about the U.S. consumer bill pay market (Section VII) and bill pay methods (Section VIII) sets the foundation for his testimony.  True Report at ⁋⁋ 23–54, Attach. 403 to Doty Decl. (docket no. 92-3).  This testimony is relevant because it supports Defendants' theory that Doxo's business practices are normal and expected.  True then applies these principles to his interpretation of Doxo's operations (Section IX), discussing payment funding and remittance, payment validation processes, and biller directory quality assurance practices. Id. at ⁋⁋ 55–83.  True's recitation of Doxo's business model and business case for a centralized bill pay platform are necessary to lay the factual foundation for this analysis and is therefore relevant.  True's explanation of Mastercard's RPPS (Section X) is relevant to the FTC's theories that Doxo collects money from consumers without paying the biller or pays the biller late, thereby causing consumers to incur late fees or other negative outcomes.  See id. at ⁋⁋ 84–91; Defs.' Resp. to Mot. for Summ. J. at 14 (docket no. 147).  Finally, True opines on the fees and costs associated with bill payments (Section XI), Doxo's chargeback procedures and rates (Section XII), and biller warnings about Doxo (Section XIII).  True Report at ⁋⁋ 92–150, Attach. 403 to Doty Decl. (docket

ORDER - 5

no. 92-3).  The FTC relies on Doxo's practices in this area and external evidence to support its claims, thereby making these portions of True's testimony relevant.

### (iii)   The reliability of True's testimony

Relying on Moussouris v. Microsoft Corp., 311 F. Supp. 3d 1223 (W.D. Wash. 2018), the FTC argues that True's conclusions about Doxo's practices (Sections IX–XII of True's report) are improper as expert testimony because True identifies no methodology or specialized knowledge or experience that explains how he reached them. Mot. at 7 (docket no. 99).  The FTC's reliance on Moussouris is misplaced.  The Moussouris Court indicated that, even if the expert relied on sufficient facts or data, she did not adequately specify the method by which she arrived at her conclusions, noting that the expert failed to explain how her experience led to her conclusion or how her experience was applicable to the facts at issue in that case.  311 F. Supp. 3d at 1246–47. In contrast, in Ulbricht, which is cited by Defendants, the court deemed an expert's testimony reliable where he identified applicable industry standards in his report and contrasted them with "an atypical case, like this one."  576 F. Supp. 3d at 857; Resp. at 8 (docket no. 139).

True's testimony is more similar to the expert's testimony in Ulbricht than to the expert's proffered opinion in Moussouris.  In his report, True identified industry standards and then applied them.  See Sections IX–XII, True Report, Attach. 403 to Doty Decl. (docket no. 92-3).  For example, True opines that "Doxo has robust processes for minimizing chargebacks," Doxo's chargeback rate is "well below industry thresholds for fines or monitoring programs," and Doxo's "win rate of approximately 80% on bill

ORDER - 6

payments and about 50% on its subscription (doxoPLUS) products" compares to "an industry average success rate of roughly 45%." Id. at ¶ 124.  In discussing Doxo's "multi-layered payment validation framework," True states that the validation criteria "are based on a combination of industry standards (e.g., financial institution formatting norms) and direct input from billers." Id. at ¶¶ 72–74.

The FTC also argues that True's conclusions about biller warnings concerning Doxo (Section XIII of True's report) are not reliable because he offered a definitive conclusion that a "small minority" and "tiny portion" of billers have issued such warnings, despite not asking Doxo whether a spreadsheet upon which he based this conclusion was comprehensive.  Mot. at 7–8 (docket no. 99).  The FTC does not, however, point the Court to a more comprehensive list of billers who have issued warnings that would support a conclusion that True's testimony on biller warnings is unreliable because he "failed to consider the relevant underlying facts necessary to support his opinions and conclusions." Moussouris, 311 F. Supp. 3d at 1244 (quoting Powell v. Anheuser–Busch Inc., 2012 WL 12953439, *7 (C.D. Cal. Sept. 24, 2012)).

For the foregoing reasons, the FTC's Motion to Exclude Expert Testimony of David True, docket no. 99, was DENIED.

**(b)    Dr. Ann Schlosser**

Ann Schlosser, Ph.D., is a marketing professor whose research focuses on consumer behavior, Internet and digital marketing, and communication in technology-mediated environments.  Schlosser Report at ¶¶ 4 & 6, Attach. 448 to Doty Decl. (docket no. 92-48).  In her report, Dr. Schlosser reached the following conclusions:

ORDER - 7

(1) reasonable consumers would correctly interpret search engine results for Doxo and are not likely to be misled; (2) reasonable consumers would correctly interpret the website and accompanying disclosures to understand that Doxo is not the biller and does not have a formal affiliation with their biller; (3) reasonable consumers would understand that Doxo charges a fee for certain transactions; (4) the option to pay for free by using a linked bank account is stated clearly and repeatedly throughout the payment process; (5) reasonable consumers would understand that doxoPLUS is a subscription service; and (6) isolated consumer complaints do not alter the foregoing conclusions. Id. at ₱₱ 15–21. The FTC argues that Dr. Schlosser's testimony is unreliable and unhelpful. Mot. at 3 (docket no. 102).

### (i)    Dr. Schlosser's qualifications

The FTC does not challenge Dr. Schlosser's qualifications. Dr. Schlosser received her Ph.D. and M.A. in social psychology with a double minor in advertising and quantitative psychology. Schlosser Report at ₱ 5, Attach. 448 to Doty Decl. (docket no. 92-48). Dr. Schlosser has over thirty publications in academic journals, conference proceedings, and book chapters. Id. at ₱ 6. Dr. Schlosser teaches several classes to undergraduate and graduate students at the University of Washington, including Introduction to Marketing, Marketing Management, Advertising and Promotion, Consumer Behavior, Market Research, and Internet Marketing. Id. at ₱ 9. The Court finds Dr. Schlosser qualified to offer the opinions in her report.

///

///

ORDER - 8

**(ii)    The Relevance of Dr. Schlosser's Proffered Testimony**

The FTC also does not appear to challenge the relevance of Dr. Schlosser's testimony, but instead questions its helpfulness. "Whether testimony is helpful within the meaning of Rule 702 is in essence a relevance inquiry." Tekoh v. County of Los Angeles, 75 F.4th 1264, 1265 (9th Cir. 2023) (quoting Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1184 (9th Cir. 2002)). The topics about which Dr. Schlosser opines include the following: (1) how consumers navigate a purchase decision-making process, Schlosser Report at ¶¶ 22–41, Attach. 448 to Doty Decl. (docket no. 92-48); (2) application of the decision-making process to Doxo customers, id. at ¶¶ 48–58; and (3) whether a reasonable consumer would be confused or misled as to fees, affiliation, or the nature of Doxo's bill pay or subscription services, id. at ¶¶ 59–116. All of these topics are clearly relevant to the issues in this case.

**(iii)    The Reliability of Dr. Schlosser's testimony**

The FTC contends that Dr. Schlosser's testimony that consumers are not deceived by Doxo's advertisements and website (Section IX, Schlosser Report at ¶¶ 59–116, Attach. 448 to Doty Decl. (docket no. 92-48)) is unreliable. Mot. at 3–4 (docket no. 102). The FTC further contends that Dr. Schlosser's proffered expert testimony is inadmissible because her opinions that consumers were not deceived due to Doxo's advertisements, website, and receipt emails containing certain items and her ancillary opinions are all unreliable and unhelpful. Id. at 4. In response, Defendants argue that Dr. Schlosser uses the well-accepted methodology of a "cognitive walkthrough" of each step of the online process that consumers experience using Doxo and her reliance on consumer decision-

ORDER - 9

making psychology and references to marketing research and consumer data is "well beyond the knowledge of the general public."  Resp. at 5 (docket no. 136).

The parties dispute the relevance of the holding in Federal Trade Commission v. Amazon.com, Inc., et al.  See Ord. at 1 (Case No. C23-0932, docket no. 417).  The Amazon Court denied the defendants' motion to exclude expert testimony on various topics.  Id.  The FTC requested that Marshini Chetty, Ph.D., provide an expert opinion on three topics, including whether the design of how Amazon enrolled consumers in Amazon Prime during online checkout confuses consumers.  Id. at 2.  The Amazon Court rejected the defendants' relevance and reliability challenges to Dr. Chetty's "cognitive walkthrough" study, concluding that "because the interface design and usability problems are beyond the common knowledge of laypersons, Dr. Chetty's walkthrough opinions could help jurors better understand the design elements of the [Amazon] Prime signup and cancellation flows" and Dr. Chetty's study was reliable because "her opinions are based on, among other things, her 20 years of experience in [human-computer interaction], peer-reviewed literature, and a well-known, widely used methodology in the [human-computer interaction] field."  Id. at 6–9.

Dr. Schlosser's analysis is similar to Dr. Chetty's, and the Court rejects the FTC's arguments in this matter for the same reasons that they were rejected when made by the defendants in Amazon.  See Resp. at 5–6 (docket no. 136).  Dr. Schlosser analyzes a consumer's experience using Doxo's service by walking through the process from encountering Doxo's advertisements on Google through each step of Doxo's bill payflow.  Rather than simply regurgitating what she can read on each webpage,

ORDER - 10

Dr. Schlosser pauses to explain why certain aspects of these webpages are not misleading or confusing, weaving in principles within her expertise and data not present on the face of any webpage.  See Schlosser Dep. at 144:19-146:25, Attach. 29 to Doty Decl. (docket no. 79-29).  Dr. Schlosser frequently provides citations to materials obtained during discovery and external sources and authorities.  Dr. Schlosser notes that the "consumer decision-making process," which she explained and implemented, is "foundational in the field of marketing and consumer behavior."  Schlosser Report at ⁋ 22, Attach. 448 to Doty Decl. (docket no. 92-48).  Although the FTC may disagree with Dr. Schlosser's opinions or critique how she reached them, such arguments bear not on the admissibility of Dr. Schlosser's testimony, but instead their weight, which can be appropriately addressed during cross-examination.  See Teradata Corp. v. SAP SE, 124 F.4th 555, 566 (9th Cir. 2024).

The FTC also argues that Dr. Schlosser's methodology is unreliable because "she failed to consider the actual facts at issue" and "due to her failure to account for the overwhelming evidence contrary to her opinion."  Mot. at 4–5 (docket no. 102).  During her deposition, Dr. Schlosser was asked several times about whether she considered certain categories of evidence as part of her analysis and if not, whether they would be relevant to her opinions.  See, e.g., Schlosser Dep. 56:5–58:14, Attach. 29 to Doty Decl. (docket no. 79) (whether the figure that return users account for 78% of all payments on Doxo includes direct billers); see also id. at 63:12–22 (alleged Doxo issue of sending many payments to the wrong biller), 111:5–112:11 (Microsoft allegedly stating that certain of Doxo's advertisements were misleading), 118:5–119:22 (statements made by

ORDER - 11

Doxo's former employee who allegedly stated that most days she tried to pretend Doxo is not entirely a scam), & 129:23–132:17 (Doxo's internal survey data).  Almost invariably, Dr. Schlosser testified that she would need more information to determine whether any of the documents shown to her or information shared with her would be relevant to her opinions in this case.  The FTC's arguments here are best addressed through cross-examination.

The FTC challenges three other broad categories of Dr. Schlosser's opinions based on their alleged unreliability and unhelpfulness:  (1) Doxo has "satisfied consumers and a loyal following," Schlosser Report at ¶ 55, Attach. 448 to Doty Decl. (docket no. 92-48); (2) certain payment data indicates that consumers were not deceived; and (3) consumers do not care about the affiliation between Doxo and their billers.  Mot. at 2, 7–10 (docket no. 102).  The Court rejects all these challenges, because (1) Dr. Schlosser's comment on Doxo consumer satisfaction is relevant to bridge the gap between her application of the consumer decision-making process and external data about Doxo's consumers; (2) the FTC may cross-examine her about the strength of these opinions, which do not make them inadmissible on their face; and (3) Schlosser stated that "paying on time, without extra fees, is important to consumers," but explained that "consumers are unlikely to know who is handling the payment or . . . make decisions on whether to buy or not based on who is handling the payment," Schlosser Report at ¶¶ 68–71, Attach. 448 to Doty Decl. (docket no. 92-48).

/ / /

/ / /

ORDER - 12

### (iv)    Ultimate Issue Testimony

The FTC argues that Dr. Schlosser's opinion on deception is an impermissible legal conclusion.  Mot. at 5 (docket no. 102).  Dr. Schlosser concludes that "the evidence does not support the conclusion that Doxo's practices are misleading, confusing, or deceiving a significant number of consumers acting reasonably."  Schlosser Report at ¶ 117, Attach. 448 to Doty Decl. (docket no. 92-48).  She uses the term "deception" or "deceived" a handful of times in the rest of her report.

Although Federal Rule of Evidence 704 permits opinion testimony that "embraces an ultimate issue," Fed. R. Evid. 704(a), the Ninth Circuit has "repeatedly affirmed" that an expert cannot offer "'an opinion on an ultimate issue of law,'" United States v. Diaz, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting Hangarter, 373 F.3d at 1016).  The Court concludes that Dr. Schlosser has not offered an opinion on an ultimate issue of law.

For the foregoing reasons, the FTC's Motion to Exclude Expert Testimony of Ann Schlosser, docket no. 102, was DENIED.

### (c)    Brian Sowers

The Court indicated on the record at the March 16, 2026, hearing its ruling on the FTC's motion to exclude Sowers.  See Hearing Tr. At 10:10–23 (docket no. 182).  The Court further explains its ruling.

### (i)    Sowers's qualifications and opinions

Brian Sowers is a market research consultant.  See Sowers Report at ¶ 1, Attach. 451 to Doty Decl. (docket no. 92).  Over the course of his career, he has personally designed and conducted thousands of market research surveys across a broad range of

ORDER - 13

modalities and a broad range of populations.  Id. at ℗ 2.  Defendants asked Sowers to review the methodology employed in several Doxo surveys to determine whether the data can be used to support the FTC's allegations.  Id. at ℗ 8.  Sowers was also asked to design and conduct a consumer survey to determine consumer general awareness of bill pay options that exist in the current market (the "Awareness Survey").  Id. at ℗ 9.  Sowers claims he relied on "generally accepted principles of market research" and his extensive experience in completing his tasks.  Id. at ℗ 10.  The FTC argues that Sowers's testimony is unreliable and unhelpful.  Mot. at 5 (docket no. 101).  The FTC does not challenge Sowers's qualifications to testify as an expert witness, and the Court concludes that Sowers is qualified.

From approximately 2019 to 2022, Doxo had designed and conducted about nineteen (19) internal surveys of Doxo's own consumers relating to topics such as doxoPLUS subscription cancellations and doxo account cancellations.  See Sowers Dep. at 19:9–18, Attach. 416 to Doty Decl. (docket no. 92-16); App'x H at 1–13 to Sowers Report, Attach. 415 to Doty Decl. (docket no. 92-15).  Sowers reviewed these internal surveys and summarizes his opinions as follows:  (1) the Doxo surveys are fundamentally flawed in design, implementation, and interpretation, and the conclusions that the FTC attempts to draw from them are not reliable for purposes of the current litigation; (2) the Doxo surveys fail to adhere to the basic principles of proper survey design set forth in the Federal Judicial Center's Reference Guide on Survey Research; (3) the flaws in the Doxo surveys, of which Sowers identifies ten, are cumulative in their impact and thus render the results of the survey of no value for purposes of the current litigation; and (4) the

ORDER - 14

results of the Awareness Survey demonstrate that just 13.3% of relevant consumers are aware they can pay a bill online through a third-party website not authorized by the biller. Sowers Report at ¶¶ 8 nn. 6 & 7, 12–15, Attach. 415 to Doty Decl. (docket no. 92-15).

### (ii) Relevance and reliability of Sowers's opinions on Doxo's internal surveys

The FTC argues that Sowers relies exclusively on guidance regarding the design of surveys conducted specifically for litigation and fails to explain why or how that literature applies to the Doxo internal surveys that Sowers analyzed. Mot. at 5–6 (docket no. 101). Sowers testified that he reviewed about nineteen Doxo surveys, Sowers Dep. at 19:12–18, Attach. 416 to Doty Decl. (docket no. 92-16), and agreed that companies' internal surveys are often not conducted according to the "Shari Diamond Chapter," a reference guide on survey research, if they are never intended for use in litigation, id. at 36:10–23. According to that reference guide, "the content and execution of a survey must be scrutinized whether or not the survey was designed to provide relevant data on the issue before the court." Shari Diamond, *Reference Guide on Survey Research*, REFERENCE MANUAL ON SCI. EVID. at 373 (3d ed. 2011). The FTC offers no authority to suggest, however, that an analysis of proper survey design and implementation varies based on the purpose for which the surveys are used. To the extent the FTC disagrees with Sowers's methodology, the FTC is free to address such concerns during cross-examination.

The FTC also contends that Sowers's conclusions are "pure ipse dixit." Mot. at 6 (docket no. 101). "[W]here expert opinion 'is connected to existing data only by the ipse

ORDER - 15

dixit of the expert' . . . there may be 'too great an analytical gap between the data and the opinion preferred' to support inclusion of the testimony." City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).  Sowers identifies from treatises and applies ten guidelines for reliable survey design throughout his analysis.  See generally Sowers Report at ¶¶ 35–87. Attach. 415 to Doty Decl. (docket no. 92-15).

Because Sowers's testimony on Doxo's internal surveys is relevant and reliable, the FTC's motion to exclude that testimony, docket no. 101, was DENIED.

### (iii)    Relevance of the Awareness Survey

The FTC argues that Sowers's Awareness Survey should be excluded under Rules 702 and 403 as unhelpful to the trier of fact for failing to advance any material issue in the case.  Mot. at 7 (docket no. 101).  Defendants argue that Doxo's surveys were not designed to measure deception and therefore show consumer perceptions without any exploration of the reason(s) for those perceptions.  Resp. at 10 (docket no. 138) (citing Sowers Report at ¶¶ 35–40).  The Awareness Survey was designed to test another explanation for consumer confusion:  preexisting consumer beliefs.  Id.

Sowers stated that the Awareness Survey results showed 13.3% of respondents indicated that they are aware they can pay a bill online through a third-party website not authorized by the biller.  Sowers Report at ¶¶ 111 & 115, Attach. 415 to Doty Decl. (docket no. 92-15).

Rule 403 "sets a high bar for exclusion:  a court may exclude relevant evidence only if its probative value is *substantially* outweighed by one or more of the articulated

ORDER - 16

dangers or considerations." Sidibe v. Sutter Health, 103 F.4th 675, 691 (9th Cir. 2024) (emphasis in original). "'[T]he application of Rule 403 must be cautious and sparing,' because its 'major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" Id. (quoting United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000)).

As the Court explained during the March 16, 2026, hearing, the Awareness Survey did not survey Doxo consumers. See Hearing Tr. 10:8–23 (docket no. 182). With the relevant period of liability being February 2021 through October 2024, a survey conducted years later of general consumers' preexisting beliefs on paying bills through a third-party is not relevant. See Hearing Tr. 114:3–17, March 16, 2026 (docket no. 182). Defendants have made no showing, through Sowers or otherwise, about how results may differ (or not) over time and how the survey Sowers conducted could bear on perceived consumer confusion two to five years ago.

For the foregoing reasons, the FTC's motion, docket no. 101, to exclude Sowers's testimony on the Awareness Survey, see Sowers Report at ¶¶ 88–111, 115, Attach. 415 to Doty Decl. (docket no. 92-15), was GRANTED.

**B.    Motions to Seal**

Two motions to seal remain pending before the Court: (1) Defendants' Unopposed Motion to Seal (docket no. 85); and (2) Plaintiff's Motion to File Under Seal (docket no. 131).

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" Kamakana v. City

ORDER - 17

& County of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 & n.7 (1978)).  Access to judicial records is not absolute, but "[u]nless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." Id. (quoting Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003)).

The standard differs based on whether the document the moving party seeks to seal is attached to a dispositive motion versus a non-dispositive motion.  For dispositive motions, the moving party "must meet the high threshold of showing that 'compelling reasons' support secrecy." Id. at 1180.  The Ninth Circuit carved out an exception to the presumption of access to judicial records for sealed discovery documents attached to non-dispositive motions such that "the usual presumption of the public's right of access is rebutted." Id. at 1179.  The public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials. Id.  For attachments to non-dispositive motions, the "good cause" standard of Rule 26(c) applies. Id.

This district's Local Civil Rules and the Court's Protective Order prescribe the process by which parties may seek to seal filings on the docket. See Local Civil Rule 5(g)(3)(B); Order at ⁋ 4.4 (docket no. 26).

1.      **Defendants' Unopposed Motion to Seal (docket no. 85)**

At a status conference held on January 27, 2026, this motion to seal was granted in part, denied in part, and reserved in part. See Minutes (docket no. 124).  The Court now addresses the remaining filings on which it previously reserved ruling. See Defs.'

ORDER - 18

Unopp. Mot. to Seal at 3–5 (docket no. 85) (all exhibits listed under the header "Defendants Doxo, Inc. and Steve Shivers Motion for Summary Judgment").  The "compelling reasons" standard applies.  Several of the remaining exhibits, including deposition transcripts and expert witness reports, were also filed under seal pursuant to the FTC's Motion to Seal, docket no. 77, which the Court granted in relevant part.  See Minutes (docket no. 124).

Instead of providing details explaining how the disclosures contained in the documents Doxo seeks to keep entirely under seal contain highly sensitive information, Defendants offer only a generic explanation for all of the exhibits:  "Proposed redactions are necessary to protect highly sensitive commercial information."  See Defs.' Unopp. Mot. to Seal at 3–5 (docket no. 85).  Nevertheless, after reviewing each individual document, the Court finds that compelling reasons exist for keeping these documents under seal.  The remaining exhibits fall under two broad categories:  (1) documents that contain highly sensitive information whose disclosure would cause competitive harm (Exs. 3, 4, 11, 12, 18, 23, 26, 27, 28, 29, 34, and 35); and (2) documents containing personally identifiable information and data about specific consumers (Exs. 17, 24, 25, 32, 45, 47, 52, and 59).  See generally King Decl. at ₧₧ 1–61 (docket no. 113).  Some exhibits fall within both categories.  As to the second category, consumers' personal information contained in these exhibits is "not reasonably necessary for the public to understand the nature of the lawsuit."  Bene v. Wells Fargo of San Leandro, 2024 WL 332895, at *2 (N.D. Cal. Jan. 29, 2024).

/ / /

ORDER - 19

Accordingly, the portion of Defendants' Unopposed Motion to Seal, docket no. 85, that was previously reserved, see Minutes (docket no. 124), is GRANTED.

### 2.    Plaintiff's Motion to File Under Seal (docket no. 131)

Defendants seek to seal "three drafts of documents that were ultimately provided in modified form to Doxo's Board of Directors and which contain extensive detail on multiple competitively sensitive aspects of Doxo's business operations, including its revenue, profit margins, cash burn, cash on-hand, user metrics, marketing expenses, strategy, and the financial details of Doxo's relationships with direct billers . . . among other sensitive information." Resp. to Pl.'s Mot. to Seal at 2 (docket no. 170). The associated board meetings took place in 2019, 2021, and 2022. See Attachs. 487–89 (docket no. 135). These three documents were filed in opposition to Defendants Doxo's and Roger Parks's motions for summary judgment, which are dispositive motions as to which the "compelling reasons" standard applies. See Mot. to File under Seal at 1 (docket no. 131); Kamakana, 447 F.3d at 1180.

The Court finds that compelling reasons exist to keep these three documents under seal. The topics covered in Doxo's board meeting documents include detailed, highly sensitive, and competitive aspects of Doxo's business operations over a four-year period. See Bisch v. County of Yolo, 2026 WL 483073, at *31 (E.D. Cal. Feb. 20, 2026).

Accordingly, Plaintiff's Motion to File Under Seal, docket no. 131, is GRANTED.

### Conclusion

For the foregoing reasons, the Court ORDERS:

ORDER - 20

(1)     Plaintiff's Motion to Exclude Expert Witness David True, docket no. 99, is DENIED.

(2)     Plaintiff's Motion to Exclude Expert Witness Ann Schlosser, docket no. 102, is DENIED.

(3)     Plaintiff's Motion to Exclude Expert Witness Brian Sowers, docket no. 101, is GRANTED in part and DENIED in part.

(4)     The portion of Defendants' Unopposed Motion to Seal, docket no. 85, that was previously reserved, see Minutes (docket no. 124), is GRANTED.

(5)     Plaintiff's Motion to File Under Seal, docket no. 131, is GRANTED.

(6)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 8th day of April, 2026.

Thomas S. Zilly
United States District Judge

ORDER - 21